### MISSOURI, K. & T. RY. CO. v. LENAHAN.

No. 7133—Opinion Filed Dec. 11, 1917.

Rehearing Denied March 19, 1918.

(171 Pac. 455.)

(Syllabus.)

**1. Appeal and Error — Limitation of Actions — Reversal — Remand — Amendment — New Cause of Action.**

A judgment for the plaintiff in an action for damages for wrongful death cognizable under the federal Employers' Liability Act (Act Cong. April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1916, §§ 8657-8665]), commenced by the widow of the deceased in her personal capacity, was reversed by the Supreme Court of the state upon the ground that the plaintiff could not, although sole beneficiary, maintain the action, except as personal representative, such reversal being without prejudice to such rights as the personal representative might have. Held, not error for the trial court upon remand to allow the petition to be amended by joining the widow as personal representative of the deceased, as party plaintiff, without in any way enlarging or modifying the facts upon which the action was based. Held, further, that such amendment of the petition is not equivalent to the commencement of a new action, for the purpose of applying the two-year limitation provided by the statute.

**2. Master and Servant — Death of Servant — Federal Employers' Liability Act — Duty of Engineer — Discovered Peril.**

In an action for damages for wrongful death commenced by the personal representative of a deceased employe under the federal Employers' Liability Act, it was alleged, in substance, that the death of the deceased was caused by a head-on collision between a south-bound passenger train, drawn by an engine of which one H. was engineer, and a north-bound freight train, drawn by an engine of which one L., the deceased, was engineer; that engineer H. wholly failed, after discovering that said freight train was so approaching, to get his train under control, but kept running in the direction of the train operated by said L. at a high and dangerous rate of speed; that said engineer H. actually discovered the condition of the train being pulled by said L. in ample time to have avoided the collision, but that said engineer H. took no steps to avoid the same, but allowed the train operated by him to violently collide with the engine said L. was running in such a way as to cause the instant death of the latter. The evidence, which upon this point was in no material part conflicting, disclosed that at the time of the collision, the passenger train, which had the right of way over the freight train, was proceeding south 40 minutes late. pursuant to orders to that effect previously received, and that the freight train was proceeding north on the time of the passenger train in disregard of orders previously received by it and the well-known rules of the railway company. Held, that the duty of engineer H. to engineer L., the deceased, did not begin until he actually discovered the peril of L. Held, further, that notwithstanding the negligence of L. the railway company would be liable if it appeared that engineer H., after discovering the peril of L., did not use such precaution as an ordinarily prudent person would use under like circumstances to avoid the collision.

**3. Negligence — Contributory Negligence.**

Before the question of contributory negligence on the part of the plaintiff can arise.

primary negligence on the part of the defendant must be shown.

**4. Master and Servant — Trial — Misleading Instructions — Pleadings and Evidence.**

Record examined, and held, that instructions Nos. 12, 16, 17, given by the courts, are erroneous and misleading, for the reasons pointed out in the opinion.

**5. Master and Servant — Death of Servant — Contributory Negligence.**

Under the well-known rules of the railway company, the deceased, L., the engineer of the freight train, was equally responsible with his conductor for the safety of their train, and it was error to refuse to instruct the jury to that effect upon the request of the defendant.

**6. Master and Servant — Action for Death —Federal Employers' Liability Act—Contributory Negligence —State Constitution —Assumption of Risk.**

This being an action for damages for wrongful death arising under the federal Employers' Liability Act, section 6, art. 23, Williams' Constitution, which changes the common-law rule as to assumption of risk and contributory negligence, is inapplicable.

**7. Appeal and Error — Reversible Error.**

After an examination of the entire record, it appears that the errors complained of, and herein pointed out, have probably resulted in a miscarriage of justice.

Error from District Court, Craig County; Preston S. Davis, Judge.

Action by Etta Lenahan, and Etta Lenahan as administratrix of estate of James Lenahan, deceased, against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff, and defendant brings error. Reversed, and cause remanded for a new trial.

Clifford L. Jackson, W. R. Allen, and M. D. Green, for plaintiff in error.

Edw. H. Brady and W. H. Kornegay, for defendant in error.

KANE, J. This action was originally commenced in the district court of Craig county by Etta Lenahan in her individual capacity, for the purpose of recovering damages against the plaintiff in error herein for the wrongful death of her husband, James Lenahan. The action as thus commenced was subsequently tried, and resulted in a verdict in favor of the plaintiff in the sum of $15,-000. Upon appeal ,this judgment was reversed, upon the ground that the widow of a deceased railroad employe cannot prosecute in her own name the action for damages given by the Employers' Liability Act of

April 22, 1908, "to his or her personal representative for the benefit of the surviving widow or husband and children of such employe." M., K. & T. Ry. Co. v. Etta Lenahan, 39 Okla. 283, 135 Pac. 383. The Supreme Court, however, upheld the right of the plaintiff to so amend the petition in the trial court as to permit the action to be prosecuted in the name of the personal representative of the deceased for the benefit of the surviving widow, there being no children. Upon the cause being remanded to the trial court, counsel for the plaintiff .amended her petition in pursuance of their understanding of the mandate of the Supreme Court, by adding to the title of the cause the name of "Etta Lenahan, Administratrix of the Estate of James Lenahan, Deceased," as party plaintiff; she in the meantime having been duly appointed such administratrix. Upon the petition being thus amended, issues were joined substantially as in the former trial, and the cause was again tried to a jury, and resulted in a verdict "in favor of the plaintiffs" in the sum of $20,000, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

As a full and complete statement of the pleadings and the issues involved may be found in the opinion formerly handed down, we will not undertake to restate them here, nor to review any of the questions of law that were then passed upon, except in so far as we may find it necessary to a clear understanding of the questions for review growing out of the new trial.

The death of engineer Lenahan was caused by a head-on collision between a south-bound passenger train, known as the "Katy Flyer," drawn by an engine of which one Hotchkiss was engineer, and a north-bound freight train, of which the decedent, Lenahan, was engineer. The specific act of negligence relied upon for a recovery may be summarized substantially as follows: That said engineer Hotchkiss wholly failed, after discovering that said freight train was so approaching, to get his train under control, but kept running in the direction of the train operated by said Lenahan at a high and dangerous rate of speed; that said engineer Hotchkiss actually discovered the condition of the train being pulled by said Lenahan in ample time to have avoided the collision, but that said engineer took no steps to avoid the same, but allowed the train operated by him to violently collide with the train that said Lenahan was running in such a way as to cause the instant death of the latter; that said Lenahan used all precaution to avoid said collision, and he also used all necessary

precaution to avoid being hurt, and that said collision occurred by reason of the fact that the engineer on the passenger train took no steps to get his train under control after discovering the approach of the engine on which said Lenahan was engineer.

The defense of the railway company was, in brief, that the Flyer was proceeding south 40 minutes late, pursuant to orders to that effect previously received, and that the freight train was proceeding north upon the time of the Flyer in disregard of orders previously received by it; that, the collision being caused by this act of negligence and disobedience of orders on the part of Lenahan, his administratrix was not entitled to recover. Counsel for plaintiff in error state their grounds for reversal in their brief as follows: (1) The defendant in error, Etta Lenahan, is not the proper party to maintain this suit in her individual capacity. (2) The injuries for which the defendants in error are seeking damages were not due to any negligence on the part of the plaintiff in error, but were due solely to the independent negligence of the deceased, James Lenahan. (3) The trial court erred in refusing to instruct the jury to return a verdict in favor of the plaintiff in error, and in denying to the plaintiff in error a new trial. (4) The trial court should have instructed the jury that it was the duty of engineer Lenahan to obey the rules and orders of the company. (5) The doctrine of the last clear chance is not properly involved in this case. (6) The trial court erred in admitting opinion evidence as to within what space a train could be stopped and the space within which other trains had been stopped. (7) The court should have given the requested instructions on the question of proximate cause. (8) The court erred in refusing to give to the jury requested instruction No. 24. (9) The instruction given by the court touching the diminution of damages was erroneous and prejudicial to the plaintiff in error. (10) The provisions of our state Constitution, changing the common law as to assumption of risk and contributory negligence, are inapplicable. (11) The trial court erred in charging the jury as it did touching the measure of damages, and in declining to give instructions requested by plaintiff in error. (12) It was error to instruct the jury in this case that three-fourths of their number could return a verdict. It was also error to receive a verdict which was not unanimous. (13) The trial court erred in refusing to instruct the jury to return a verdict in favor of the plaintiff in error and in denying to the plaintiff in error a new trial.

In support of their first assignment of error counsel say in their brief:

"The action of the trial court in permitting Etta Lenahan as an individual to remain as a party plaintiff in this suit is directly contrary to the opinion remanding the case and also to the opinions by the Supreme Court of the United States."

The federal Supreme Court decisions cited in support of this proposition are American Railway Co. v. Birch, 224 U. S. 547, 32 Sup. Ct. 603, 56 L. Ed. 879, and St. Louis, S. F. & T. R. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129, Ann. Cas. 1914C, 156. These decisions which were followed by the Supreme Court of the state on the former appeal undoubtedly hold that where, as in this case, the federal statute is applicable, the right of recovery, if any, is in the personal representative, and no one else can maintain the action. But this is not the precise proposition presented by the record in the instant case.

In M., K. & T. Ry. Co. v. Wulf, 226 U. S. 570, 33 Sup. Ct. 135, 57 L. Ed. 355, Ann. Cas. 1914B, 134, the action of the trial court in allowing the sole surviving parent of the decedent to amend her petition, wherein she sued for damages under the state law in her individual capacity, by joining the personal representative as a party plaintiff and proceeding under the federal Employers' Liability Act, was upheld. In distinguishing American Ry. Co. v. Birch, supra, Mr. Justice Pitney, who delivered the opinion of the court, said:

"It is true that under the federal statute the plaintiff could not, although sole beneficiary, maintain the action except as personal representative. So it was held in American R. Co. v. Birch, 224 U. S. 547, 56 L. Ed. 879, 32 Sup. Ct. 603. But in that case there was no offer to amend by joining or substituting the personal representative, and this court while reversing the judgment, did so without prejudice to such rights as the personal representative might have. The decision left untouched the question of the propriety of such an amendment as was applied for and allowed in the case before us, an amendment that, without in any way modifying or enlarging the facts upon which the action was based, in effect merely indicating the capacity in which the plaintiff was to prosecute the action. The amendment was clearly within section 954, Rev. Stat. U. S. Comp. Stat. 1901, p. 696 [U. S. Comp. St. 1916, § 1591.]"

It seems to us that this case furnishes authority for the practice followed herein of amending by joining the plaintiff in her representative capacity as party plaintiff, instead of by substitution. The change made by the amendment, as in the Wulf Case, was in

form rather than in substance, and, even if it were conceded that it would be a better practice to make the amendment by substituting rather than by joining, we are unable to perceive how in the circumstances of this case, the plaintiff being the sole surviving beneficiary, any substantial right of the plaintiff can be affected by the amendment as made. Aside from the capacity in which the plaintiff brought her action, there is no difference between the original and amended petitions. In the former, as in the latter, it was sufficiently averred that the deceased came to his death through injuries suffered while he was employed by the defendant railroad company in interstate commerce; that his death resulted from the negligence of the company, and that the plaintiff is the sole surviving heir and beneficiary. In these circumstances, there is slight probability that the error complained of, if error at all, resulted in a miscarriage of justice.

The next assignment of error is one of considerable seriousness, as it involves a decision of the case upon its merits. We are convinced from the evidence in the record that there is no room for any reasonable doubt that at the time of the collision the Flyer was proceeding south 40 minutes late pursuant to its orders, and had the right of way, and that the freight train was proceeding north on the time of the Flyer, contrary to its orders and the rules of the company. It is true that there is some contention on the part of counsel for the defendant in error in their brief that the freight train left the yards at Muskogee in ample time to clear the Flyer at the next siding north of that point, but it is not alleged, nor is there any attempt to show, that the Flyer was running ahead of time; so, even if this contention is conceded, the most that can be said is that the freight train must have lost time after leaving the Muskogee yards, for certainly it was on the main line on the time of the Flyer without flagging against it, contrary to the well-known rules of the company, at the time the collision occurred. In these circumstances, the duty of Hotchkiss, the engineer of the Flyer, which had the right of way, toward the engineer and crew of the freight train commenced when he first became aware of the peril of the deceased, and it is from this standpoint that we will examine the remaining assignments of error.

The applicable rule, we think, may be gathered from the following cases which, while not precisely in point, are somewhat analogous in principle, and illustrate the point now under consideration: New York. N. H. & H. R. Co v. Kelley, 93 Fed. 745, 35 C. C. A. 571;

Ackerman v. Union Traction Co., 205 Pa. 477, 55 Atl. 16; Louisville, H. & St. L. R. Co. v. Hathaway, 121 Ky. 666, 89 S. W. 724, 2 L. R. A. (N. S.) 498; L. R., M. R. & T. Ry. Co. v. Haynes, 47 Ark. 497, 1 S. W. 774; A., T. & S. F. Ry. Co. v. Baker, 1 Okla. 51, 95 Pac. 433, 16 L. R. A. (N. S.) 825; Clark v. St. L. & S. F. R. Co., 24 Okla. 764, 108 Pac. 361. Under the doctrine announced in some of these cases, notwithstanding the absence of primary negligence on the part of the company, the negligence of Lenahan would not prevent the plaintiff from recovering if it be shown that engineer Hotchkiss, by the exercise of reasonable care and prudence, might have avoided the consequences of the negligence of the deceased after discovering his peril. In the Hayes Case, supra, the action was brought by the plaintiff, who was using the railroad track as a foot-path, to recover damages for being run over by a passing train. The evidence showed that the plaintiff, while drunk, started out to walk down the railroad track: that when he had gone a half mile he was, according to his own statement, overtaken by a blind spell, fell upon the track, and knew no more until he was run over. The court held:

"The railway company is not responsible, unless its trainmen had a clear opportunity after discovery of the plaintiff's peril, to avoid striking him."

Keeping this rule in mind, let us now examine the evidence, with the view of determining its sufficiency to take the case to the jury on the one material issue of fact involved: Engineer Hotchkiss testified concerning the collision substantially as follows:

"I reside in Parsons, Kan., and during the month of May, 1908, I was engineer on train No. 5, known as the 'Katy Flyer,' over the Cherokee division. I have been in the employ of the M., K. & T. for 31 years as engineer and have been running train No. 5 ever since it has been on the road. I am still a locomotive engineer for the M., K. & T., but my physical condition at the present is not such that I can run a train. I was the engineer on the Flyer at the time of the collision with freight train No. 412 on May 15, 1908. My run extended from Parsons to Muskogee. I received order No. 34 for the movement of my train at Wagoner. I received it from Conductor Green and also a clearance card. Order No. 34 reads as follows: 'No. 5 engine 312 will wait at Wagoner until 11:45 a. m. for second 404 engine 562. No. 5 will run 40 minutes late Wagoner to Muskogee.' I received no other orders at Wagoner. We left Wagoner at 11:45 a. m., running under the order 40 minutes late. Train No. 5 is a first-class train. The fact that we were running late did not change the class of the train. Under that order the train I was pulling had the absolute right of way from Wagoner to Muskogee. Jesse W.

Emery was my fireman. We met another train between the Arkansas river bridge and Muskogee. I spoke to Emery as we came out of the cut, and saw this train. We had no conversation before that. Nothing was said at the Arkansas river bridge between Emery and me. Coming out of the Arkansas river bridge, I was making at least 60 miles per hour. I noticed some smoke along there, which was a usual occurrence, because there is another road running along there parallel to our road, which is known as the M., O. & G. I expected the smoke was on the other track, as it was a frequent occurrence there. I did not expect to find anything on our track, because I had absolute right. I first discovered the obstruction on our track when I was about 1,000 feet south of the Arkansas river bridge. The first thing I did was to shut off my engine. I then applied my air and gave the sander a turn. There was nothing else that I could do to stop the train. I turned the brake valve to the emergency position; that was all I could do. Fireman Emery jumped from the engine about the engine length and one-half from whe we collided. I received a broke leg, and my neck was badly hurt, and I had an enlarged rupture."

Several other witnesses corroborated that part of the testimony of Engineer Hotchkiss to the effect that he turned the brake valve to the emergency position; and all parties agree that this. together with giving the sander a turn, was all that could have been done to avoid the collision. Other evidence, which was not seriously contradicted, shows that when Engineer Hotchkiss first discovered the approaching freight train he was running at the rate of 60 miles an hour; that the two trains were about 1,200 feet apart, and that at the moment of the collision the passenger train had slowed down to about 40 miles an hour, and the freight train, which had been running about 25 or 30 miles an hour, had slowed down to about 15 miles an hour.

Fireman Emery of the Flyer upon whose testimony counsel for plaintiff principally relied to establish the allegations of their petition, testified substantially as follows:

"At the time of the accident I had been fireman on the Flyer for about 5 years, and was on the Flyer on the day of the collision. The steam was not altogether shut off. It was eased off on the throttle, and there was a service application of the air. I noticed the condition of the track over which the Flyer passed. There was no sand on the track. The engine was equipped with sand boxes. A service application is simply to slow down and stop gradually. The emergency application means to put on the full force of the air. The train usually consisted

of ten cars. With the emergency application it could have been stopped within 1,000 feet."

On cross-examination he testified substantially as follows:

"I was never an engineer, but served as fireman 9 years. I am not running on the road now. I never had occasion to apply the emergency stop on the Flyer, and never took the train all the way over a division. I have run it for short distances, but under the direction of the engineer. I never did apply the emergency brake only on a single engine."

As all the witnesses agree that the proper thing to do in the circumstances was to apply the emergency brake and sand the rail, it is obvious that there is a sharp conflict between the other witnesses for the railway company and Fireman Emery as to whether or not this was done. It is only when the evidence, with all the inferences which the jury could justifiably draw from it, will be insufficient to support a verdict for the plaintiff that the court is authorized to direct a verdict for the defendant; and, unless the conclusion follows as a matter of law that no recovery can be had upon any view that can be properly taken of the facts which the evidence tends to establish, the case should be left to the jury under proper instructions. Cooper v. Flesner et al.. 24 Okla. 47, 103 Pac. 1016, L. R. A. (N. S.) 1180, 20 Ann. Cas. 29; Harris et al. v. M., K. & T. Ry. Co., 24 Okla. 341, 103 Pac. 758. 24 L. R. A. (N. S.) 858; Chestnutt-Gibbons Groc. Co. v. Consumers' Fruit Co., 44 Okla. 318, 144 Pac. 591. Applying this rule, the evidence was sufficient to take the case to the jury under proper instructions, although we believe the weight of the evidence supported the testimony of Engineer Hotchkiss.

The instructions complained of in the next assignment of error, which we deem it necessary to notice, read as follows:

"(12) If you find from the evidence that train No. 412, upon which James Lenahan was employed and riding at the time of his death, was under the charge, supervision, and control of the conductor, Robert Daigh, and that Lenahan was subordinate to said Daigh, and subject to his orders, and that said Daigh ordered said train No. 412 to go out upon the main track, and said Lenahan in taking said train out upon the said main track was obeying the orders of his superior, you may consider this as tending to show whether or not James Lenahan contributed, by his own negligence, to the act or acts which caused his death."

"(16) You are further instructed that if the train orders were read to Lenahan and he heard same and understood their import,

and that he then took the said train out upon the main line at a time when he knew train No. 5 was due upon the same track and coming in opposite direction, then you may consider those facts as tending to show negligence on the part of the said Lenahan, and you may determine whether such negligence contributed to the collision which caused his death; and, if you determine that it did so contribute to his injury and death, you will find to what extent it so contributed."

"(17) The first question for you to determine is whether or not the defendant railway company, through its agents, servants, or employes, except the deceased, James Lenahan, was negligent, and that through such negligence the collision occurred between train No. 5 and No. 412, and whether such negligence caused the death of the said James Lenahan. If you determine this question against the defendant railway company and find that it was guilty of negligence, then the next question for you to determine is whether or not James Lenahan was guilty of negligence on his part, which negligence contributed to the collision and to his death. If you find that the said James Lenahan was free from negligence on his part and did not, by an act or omission, contribute to the collision which caused his death, then your verdict should be for plaintiffs, and if you further find that James Lenahan was guilty of negligence, and by any act or omission of his own contributed to the cause which brought about his death, then you may consider the negligence of the deceased, James Lenahan, for the purpose of decreasing the damages you will allow to the plaintiffs: and you will decrease the damages which you allow the plaintiffs in the proportion to which James Lenahan contributed to the collision by negligence on his part which caused his death."

Instructions No. 16 and No. 17, we think, are faulty, as not being applicable to the precise case presented by the pleadings and the evidence. As we have stated elsewhere in this opinion, there can be no doubt from the evidence that Engineer Lenahan, in violation of the well-known rules of the company, was encroaching upon the time of the Flyer at the time the collision occurred; that the Flyer was proceeding south pursuant to its orders, and that if there was any actionable negligence on the part of Engineer Hotchkiss, it consisted wholly in not exercising reasonable care and prudence to avoid the consequences of Engineer Lenahan's negligence, after discovering his peril. No other act of negligence on the part of the defendant is averred, and there was no attempt at the trial to establish any other. In Barnsdall Oil Co. v. Ohler, 48 Okla. 651, 150 Pac. 98, it was held that before the question of contributory negligence on the part of the plaintiff can arise, negligence on the part of the defendant must first be shown. If this is sound law, instructions No. 16 and No. 17, touching the contributory negligence of the deceased, should have been omitted.

Instruction No. 12 is objectionable upon another ground. There was some evidence tending to show that the conductor of train No. 412 ordered Engineer Lenahan to leave the yards at Muskogee and go out upon the main line. There is a strong intimation in instruction No. 12 that if this were found to be so, Engineer Lenahan would be justified in obeying the orders of his conductor, rather than those of the train dispatcher and the rules of the company. Certainly the jury were instructed to consider this as tending to show whether or not Lenahan contributed by his own negligence to the act which caused his death. This is an incorrect statement of the law. The uncontradicted evidence was to the effect that the rules of the company were binding upon the engineer and conductor alike, and that engineer Lenahan had no right to move his train in violation of the established rules of the company, even upon the direct order of his conductor. Rule 105 provides:

"Both conductor and enginemen are responsible for the safety of their trains, and under conditions not provided for by the rules must take every precaution for their protection."

Rule 315 provides:

"All trains will be run under the direction of conductors, except when they conflict with rules or involve risk, in which case the enginemen will be held equally responsible."

Rules similar to these were considered in York v. Chicago, M. & St. P. Ry. Co., 98 Iowa, 544, 67 N. W. 574, where the court disapproved the contention that when Graham, the engineer, was ordered by the conductor to start, he had a right to assume that the conductor had some information relating to orders which justified them in running on 92's time, saying that, "such information could only come to Haggerty (conductor) in the form of orders from his superiors." Generally the authorities are uniform that the injured party cannot escape responsibility for his own act by placing the responsibility on another by claiming that he was acting under the direction of another. Fritz v. M., K. & T. Ry. Co. (Tex. Civ. App.) 30 S. W. 85; Martin v. Northern Pacific Ry. Co., 87 Wash. 91, 151 Pac. 113; Baltimore & O. R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Nordquist v. Great Northern Ry. Co., 89 Minn. 485, 95 N. W. 322; Great Northern Ry. Co. v. Hocker, 170 Fed. 154, 95 C. C. A. 410;

M., K. & T. Ry. Co. v. Collier, 157 Fed. 347, 88 C. C. A. 127.

Under the next assignment of error counsel contend that the trial court erred in refusing to give the following requested instructions:

"(12) You are instructed that it was the duty of the deceased, James Lenahan, to observe the rules and orders of the railway company with reference to the running of his train."

"(14) You are instructed that the deceased, James Lenahan, the engineer of the freight train, was equally responsible with the conductor of the freight train for the safety of that train."

"(16) Although you may find from the evidence that conductor Daigh violated the rules and orders of the railway company with reference to movement of the freight train, the railway company is not liable to the plaintiffs by reason of such acts of Conductor Daigh.

"(17) Although you may find from the evidence that Conductor Daigh of the freight train was negligent in permitting the said train to go out on the main track in the direction of Verdark at the time he did permit said train to go out, the railway company is not liable to the plaintiffs on account of such negligent acts of Conductor Daigh."

"(28) You are instructed that under the evidence in this case the passenger train had the right of way at the time of the collision, and that it was the duty of the employes in charge of the freight train to keep said train out of the way of the passenger train."

From what we have already said in our discussion of the last assignment of error in relation to the duty of the engineers to obey the reasonable rules of the company, it follows that instructions to this effect should have been given upon the request of the railway company.

On the next assignment of error it is sufficient to say that we have already held the applicable principle to be that the railway company is not responsible unless it be shown that engineer Hotchkiss had a clear opportunity, after the discovery of Engineer Lenahan's peril, to avoid the collision. In these circumstances it was not error to instruct the jury as follows:

"You are instructed that it was the duty of engineer Hotchkiss, the engineer on train No. 5, to use such precaution as an ordinarily prudent person would use under like circumstances to avoid the collision, and if you find from the evidence that the deceased, Lenahan, in pulling his train out upon the main track, was guilty of negligence, this would not exempt the defendant railway company from liability for his death in the event the evidence shows that the engineer on train No. 5, after discovering the position of Lenahan's train, did not use such precaution as an ordinarily prudent person would use under like circumstances to avoid the collision, and if you find that the death of Lenahan would not have happened if such precaution had been used, then you will find for the plaintiffs herein and against the defendant railway company."

The only remaining assignment of error we deem it necessary to notice is that, this being a cause of action arising under the federal Employers' Liability Act, the provision of our state Constitution (section 6, art. 23, Williams' Constitution), changing the common law as to assumption of risk and contributory negligence, is inapplicable. The contention is that, in an action commenced under the federal Employers' Liability Act, no state law applies, as the federal act covers the entire field. We think this is undoubtedly true as to contributory negligence, at least. Under the Employers' Liability Act, the fact that the employe may have been guilty of contributory negligence does not constitute a defense to the action, but the damages shall be diminished by the jury in proportion to the negligence attributable to such employe. We think, therefore, that the jury should be instructed in pursuance of the federal statute upon the theory that contributory negligence is not a defense, but that the damages, if any, shall be diminished by the jury in proportion to the amount of negligence attributable to the injured employe. In St. L. & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 Pac. 1083, it was held:

"Under the federal Employers' Liability Act, the law of assumption of risk is that of the common law, as it existed prior to the passage of said act, except where the common carrier violates the provisions of any statute enacted for the safety of its employes; and the assumption of risk, under the facts in this case [the injury not being caused by any violation of such act providing for the protection of employes], was a question of law for the court."

Generally on the points now under consideration see Seaboard A. L. R. Co. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Central Vermont Ry. Co. v. White, 233 U. S. 507, 35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252.

We think we have noticed all the assignments of error necessary to insure the avoidance of error in the new trial of this case which we find it necessary to grant. In our judgment, there is but one issue of fact to be submitted to the jury, and that is whether,

by the exercise of reasonable care and prudence, after the deceased was discovered in a place of peril, Engineer Hotchkiss could have avoided the collision. In our judgment the great weight of the evidence is against the finding of the jury on that point, although we believe there is evidence reasonably tending to support it. In these circumstances, as we have seen, this being an action at law, we are not at liberty to set the verdict aside on the ground that it is not supported by the weight of the evidence. However, on account of the meagerness of the evidence to support the verdict, and our very grave doubts as to whether the accident could have been averted by any means within the power of Engineer Hotchkiss after he discovered the peril of the deceased, we cannot escape the conviction that the errors we have hereinbefore pointed out probably resulted in a miscarriage of justice.

For the reasons stated, the judgment of the court below is reversed, and the cause remanded for a new trial.

All the Justices concur.