**SCHAFF, Rec., v. RICHARDSON, Adm'x.**

No. 15279—Opinion Filed April 6, 1926.

Rehearing Denied Nov. 16, 1926.

**1. Master and Servant—Death of Railroad Brakman—Negligence—Allegations and Proof.**

In an action for personal injury resulting in death, allegations of negligence in handling, operating, and controlling defendant's "line and system of railroad", followed by proof that a certain train was annulled between two designated stations on the line, but that said train was not mentioned in an order annulling trains between such points, the train so annulled but omitted from the annulment order being then dispatched in the opposite direction on the regular schedule of one of the trains named in the annulment order, resulting in a collision with the train on which deceased was working as rear brakeman, were sufficient to raise an issue of fact for determination by a jury on the question of defendant's negligence, regardless of whether there was negligence on

the part of the crew of either of the trains at the time of the collision.

## 2. Trial—Instructions—Failure to Define Issues—Copying Pleadings.

In a trial to a jury, where the court fails and refuses, over objection and exception of defendant, to define to the jury the issues raised by the pleadings, but instead copies in full such pleadings and leaves it to the jury to determine for itself what issues shall be settled by its verdict, such action by the trial court is prejudicially erroneous, especially where the pleadings cover many pages of the typewritten record, raise numerous issues, and present close technical questions about which laymen can have no accurate or professional knowledge. It is the duty of the trial court to define and properly limit the issues submitted to the jury for determination.

## 3. Negligence—Contributory Negligence — Erroneous Failure to Define Fully in Instruction.

An instruction on contributory negligence which omits one of the essential elements heretofore determined by this court to be necessary to a correct instruction, and the refusal to give a correct instruction thereon requested by defendant, is erroneous.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Pawnee County; Edwin R. McNeill, Judge.

Action by Mary D. Richardson, as administratrix of the estate of Samuel Brutus Richardson, against Chas. E. Schaff, receiver of the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

This suit was commenced by plaintiff filing her petition in the district court of Pawnee county October 12, 1922, to recover the sum of $50,000 as damages resulting from the death of Samuel Brutus Richardson, who was killed July 19, 1922, as the result of a collision between extra train No. 613, running from Muskogee to Tulsa, and regular passenger train No. 224, running from Tulsa to Muskogee, the collision having occurred near Alsuma station on said line at about 5:40 o'clock a. m.

Plaintiff's petition further alleges in substance that the death of deceased was the result of negligence in the operation of both trains, and that the headlights on the engines of both trains were not lighted, or were but dimly lighted, although it was a foggy and misty morning, and that the employees of defendant on said engines and trains failed to sound the whistles thereon and to ring the bells, and that defendant failed to warn the deceased, or the other members of the crew in charge of extra train No. 613, that they were running against the time of the regular schedule passenger train No. 224, and negligently failed to give them any notice or warning of the approach or operation of said passenger train, and negligently permitted said two trains to be operated toward each other without notice or warning to either train crew, and negligently advised the engineers and conductors of each train that the track was clear. That the train orders issued to the extra train crew, of which deceased was a member, were so indefinite and uncertain that the engineer and conductor of extra No. 613 understood the track was clear, and understood that passenger train No. 224 had been annulled between Muskogee and Tulsa. That deceased received no knowledge and had no information of any such train orders which were given to the crew of the extra train, and that defendant failed to warn deceased of the risks and hazards he was subjected to because of the operation of passenger train No. 224. That deceased was lead to believe that no trains would be encountered by the extra train between Muskogee and Tulsa, and that the conductor and engineer of the extra train No. 613 negligently disobeyed such orders and instructions as were given them by defendant, and failed to advise the deceased of such orders, and that the control and operation of said extra train was in the hands of the conductor and engineer as deceased's superiors, and that deceased exercised no control whatsoever thereof.

Defendant's answer was in substance a general denial and a special plea of contributory negligence. To this answer plaintiff filed a reply consisting of a general denial. Upon the issues thus framed the cause was tried to the court and jury, resulting in a verdict and judgment in favor of the plaintiff for the sum of $20,000. After unsuccessful motion for new trial, defendant has brought the case here by petition in error with case-made attached for review.

M. D. Green and H. L. Smith, for plaintiff in error.

Tautges & Wilder, Robert J. McDonald, and Thurman S. Hurst, for defendant in error.

Opinion by LOGSDON, C. Before taking up the propositions which involve the merits of the case, two preliminary matters must be considered. Trial of the case commenced September 24, 1923, but before the jury was

selected defendant interposed a motion to quash the jury panel, assigning four grounds of objection thereto, as follows:

"First, that the panel was not selected, certified, drawn, summoned or impaneled according to the statutes; second, because the defendant is entitled to a trial by jury drawn in accordance with the statutes; third, because the court was without jurisdiction to summon talesmen until after the regular jury list had first been selected, certified, drawn, and summoned, according to the statute, and had proved insufficient; fourth, because the panel was not selected from the body of the county; and, fifth, because the defendant was deprived of a substantial right in violation of the Constitution of Oklahoma and the Constitution of the United States."

This motion, after a hearing, was overruled by the trial court and exception reserved. In the case of Schaff v. Dougherty, 112 Okla. 124, 239 Pac. 922, this identical question was determined by this court adversely to the contentions of defendant. The question was raised in that case by the same defendant at the same term of court and against the same jury panel, so that the decision there is controlling here.

The second preliminary question presented involves the correctness of the trial court's ruling in excluding evidence offered by defendant to show the terms of the contract of employment between plaintiff and certain attorneys appearing in her behalf, the contention being that the contract is champertous under the provisions of Comp. Stat. 1921, secs. 1691 and 1695. In this connection it is insisted that the trial court should have admitted the proof and sustained defendant's motion to dismiss the action without prejudice. These sections were originally in the Statutes of 1890 as sections 2044 and 2047, respectively, and were taken from the statutes of Dakota. No decision of this court has been found construing these sections, but the Supreme Court of North Dakota, in a well considered opinion and in opinion on rehearing, denied such effect to these sections as is here contended for by defendant. Woods v. Walsh et ux. (N. D.) 75 N. W. 767. But aside from this, the Legislature of this state in 1909, while the above sections were in full force and effect, enacted what is now section 4101, which authorizes an attorney to contract for a percentage of the proceeds of a client's cause of action, "not to exceed 50 per centum of the **net amount**" recovered. Under this section it cannot be material who advances the costs and expenses of the action, since the rights of the parties under the contract must be determined by the "**net amount**" recovered. No offer of proof

having been made that the contract here involved exceeded the statutory limit of 50 per centum of the net amount recovered, the trial court did not err in excluding the proffered evidence nor in overruling defendant's motion to dismiss the action without prejudice.

Upon the merits of the case several propositions are presented and argued, the substance of the contentions being that the trial court erred in submitting to the jury the question of alleged negligence in the operation of train No. 224, that the trial court erred in failing and refusing to define the issues to the jury, that the trial court erred in its instructions to the jury on the question of contributory negligence, and that it likewise erred in refusing certain instructions requested by defendant. As all of these questions are related and interdependent and as each goes to the merits of the case, they may best be considered together.

In substance, the facts disclosed by the evidence may be fairly stated thus: Tulsa is the headquarters of one of the branch line divisions of the Missouri, Kansas & Texas Railway Company. West of Tulsa on this division, and 33 miles distant, is the town of Osage, while Muskogee is 52 miles southeast of Tulsa. Muskogee and Osage were the termini of the operations involved in this action. Wybark is a station about 8 miles north of Muskogee, and is the place where the Tulsa division branches off from the main line, while Alsuma station is located about the same distance southeast of Tulsa. Train No. 224 is a regular daily passenger train on this division, and by the time card then in effect was scheduled to leave Tulsa at 5:00 a. m., pass through Alsuma and Wybark and arrive at Muskogee at 6:40 a. m. In the month of July, 1922, there were storms and excessive rainfall over this section of the state, resulting in washing out or weakening a bridge near Osage, so that passenger train No. 224 was unable to proceed from Osage to Tulsa on the morning of the 19th. Extra engine No. 613, and its crew, was then at Muskogee, and at 2:30 a. m., July 19th, the train dispatcher at Tulsa ordered this extra engine and crew to proceed from Muskogee to Tulsa, that order being train order No. 7, standard form 31, and reading:

"Eng. 613 run exa. Muskogee to Tulsa has right over No. 84 Wybark to Tulsa.

"No. 3 wait Wybark until 4:10 a. m.

"Overdue Tulsa Divn. trains Wybark 2:05 a. m. have arrived and departed.

"Overdue trains Muskogee 2.05 a. m. have arrived and departed except No. 3."

At the same time that the above running order was delivered to the conductor of extra No. 613, he was also given an order annulling certain trains on the division, being train order No. 2, standard form 31, and reading:

"Nos. 227, 229, 226 & 230 of July 19th annulled between Wybark & Tulsa.

"No. 84 & No. 81, No. 224 & No. 225 of July 19th annulled between Tulsa & Osage."

Train No. 223 was a regular daily westbound passenger train running from Muskogee to Osage, but its time card schedule is not disclosed by the record further than to show that it leaves Muskogee at 11:45 p. m., and that after reaching Osage it was customary for it to return to Muskogee as No. 224. On the 19th it was stopped at Tulsa as it could not proceed to Osage, and started its return to Muskogee from Tulsa on the schedule of No. 224 at 5:00 a. m. Extra train No. 613 collided with this passenger train about 5:40 a. m. near Alsuma station, Rear Brakeman Richardson of the extra train being killed. The railroad track is straight for a long distance in both directions from the point of collision, but on this morning the range of vision of the train crews was limited to a distance of 150 to 200 feet by a dense fog which was not penetrable by the headlights to a greater distance.

Defendant's first complaint against the instructions is that the trial court erred in submitting to the jury the question of defendant's negligence in the operation of train No. 224 from Tulsa to Muskogee on the morning of the 19th, the contention being that as No. 224 was a regular daily train with a regular schedule shown on the time card, and being a superior train, with right of clear track over all other trains, the manner of its operation would be no element of primary negligence until the danger of collision became apparent to those in charge of that train.

In support of this contention defendant relies on the case of Missouri, K. & T. R. Co. v. Lenahan, 68 Okla. 73, 171 Pac. 455. If the facts alleged and shown by the evidence upon the question of primary negligence in the instant case related solely to the manner in which train No. 224 was being operated by its crew, just prior to and at the time of the collision, the above-cited case would be very persuasive, if not absolutely controlling, upon the question of this alleged error in the instructions. In the

Lenahan Case Justice Kane expressed the limits of the issue of primary negligence under the pleadings and evidence there presented in this language (p. 78):

"As we have stated elsewhere in this opinion, there can be no doubt from the evidence that Engineer Lenahan, in violation of the well-known rules of the company, was encroaching upon the time of the Flyer at the time the collision occurred; that the flyer was proceeding south pursuant to its orders, and that if there was any actionable negligence on the part of Engineer Hotchkiss, it consisted wholly in not exercising reasonable care and prudence to avoid the consequences of Engineer Lenahan's negligence, after discovering his peril. No other act of negligence on the part of the defendant is averred, and there was no attempt at the trial to establish any other."

In the instant case the averments of primary negligence are much more comprehensive. In paragraph 7 of the amended petition it is alleged that while the extra train No. 613 was proceeding over defendant's line and system of railroad from Muskogee to Tulsa said defendant—

"So negligently and carelessly handled, managed, operated and controlled said line and system of railroad, * * * all in such manner so that said passenger train and the locomotive attached thereto, and said extra train and the locomotive attached thereto, came into a violent head-on collision. * * *"

Other paragraphs of the amended petition contain averments of negligence similar to those charged in the Lenahan Case, but the charge of negligence in paragraph 7, above excerpted, is an entirely distinct and separate averment, and susceptible of an entirely different character of proof.

It is in evidence in this case that train No. 223 and train No. 224 are one and the same train: that on leaving Muskogee westbound, it bears the first number, but on leaving Osage east bound it bears the second number. No one appearing as a witness in this case, not even the train dispatcher, knew that night where the washout had occurred. At 2:30 a. m., when its running order was delivered to the extra crew, train No. 223 would have been somewhere between Tulsa and Osage if it had been running on schedule, its running time from Muskogee to Tulsa being one hour and 40 minutes. However, it left Muskogee one hour and five minutes late on this occasion in obedience to orders, but it cannot be assumed that the extra crew knew this. In the annulment order delivered to the extra crew with its running order train No. 223 was not mentioned. Since No. 224, as a

matter of fact, was train No. 223, just turned around and headed in the opposite direction, the fact that No. 224 was annulled between Tulsa and Osage while No. 223 was not so annulled may have conceivably caused the misconstruction of the annulment order in which all members of the extra crew seem to have shared. No. 223 not being annulled between Tulsa and Osage, but its return trip as No. 224 being so annulled, and the time card showing its schedule out of Muskogee, the extra crew may have reasonably concluded that it passed the place where the washout occurred be.ore the track went out. If No. 223 had also been included in the annulment order the extra crew would have known that it was being held at Tulsa, and might have rightly concluded that it would return from there to Muskogee on schedule time as No. 224. These facts and circumstances in evidence, together with the reasonable in'erences to be drawn therefrom, were proper to be considered by the jury upon the issue of primary negligence under the above-quoted averment in paragraph 7.

A case more nearly analogous in its facts to the instant case than is the Lenahan Case is that of Clemens v. St. Louis & S. F. R. Co., 35 Okla. 667, 131 Pac. 169, where this court held that dispatching of an extra train from Cache to Lawton, without advising its crew that a regular time-card train would be still on the main line track in the Lawton yards when the extra reached there, was sufficient to take the case to the jury on the question of negligence, the resulting collision having occurred in a dense fog. In that case a custom of the extra crew to enter the Lawton yards on the main line track, instead of on the passing track in violation of rules, was held sufficiently established to make it a question of fact for the jury whether a failure to advise the extra crew of the presence of the regular scheduled train constituted negligence.

In the instant case, it being a custom and rule of defendant, required by its rules to be known to all its employes, to run the same train west as No. 223 and east as No. 224, it became a question of fact, under the circumstances here shown, whether a failure to include No. 223 in the annulment order of trains between Tulsa and Osage constituted negligence. The question of primary negligence was therefore properly submitted to the jury, and it follows that defendant's requested instructions Nos. 17, 19, and 21 were properly refused in the form tendered.

Instead of defining the issues raised by the pleadings, so that the jury would be definitely guided and directed in its consideration of the facts and circumstances in evidence, and in applying the law of the instructions thereto, the court in the instant case copied the plaintiff's amended petition and the answer of the defendant, leaving the jury to determine what issues were thus raised and presented. Plaintiff's amended petition as thus copied covers more than eight pages of the case-made, and includes the incorrect copy of the annulment order just as it appeared in plaintiff's pleading. Defendant reserved exceptions to this action of the trial court. This practice has been frequently disapproved by this court. Independent Cotton Oil Co. v. Beacham, 31 Okla. 384, 120 Pac. 969; Seay v. Plunkett, 44 Okla. 794, 145 Pac. 496; Dane v. Bennett, 51 Okla. 684, 152 Pac 347; Schmucker v. Clifton, 62 Okla. 249, 162 Pac. 1094; Newton et al. v. Allen, 67 Okla. 73, 168 Pac. 1009; Lambard-Hart Loan Co. v. Smiley, 115 Okla. 202, 242 Pac. 212. In the last case, on rehearing, this court said:

"It follows from what has been said that it is improper practice for a trial court to permit the pleadings in a case to be taken by the jury in its retirement, and where such action by a trial court is objected to and proper exception reserved, prejudicial error results."

The prejudice to defendant, from thus sending these voluminous pleadings to the jury room, was accentuated in the instant case by paragraph 10 of the court's instructions, which reads:

"You are instructed in this case that before you can find for the plaintiff it is necessary that you find: First, that there existed a duty on the part of the defendant to protect the decedent from injury; second, that the defendant failed to perform that duty; third, that the death of the decedent was the proximate result of the failure to perform said duty. When these elements are all brought together they undoubtedly constitute actionable negligence, but the absence of any one of these elements renders the evidence insufficient."

Nowhere in the instructions were the duties owing to plaintiff's intestate by de endant defined to the jury except as repeatedly and argumentatively alleged in plaintiff's petition. The jury may have concluded, and probably did, from the allegations of plaintiff's petition and the evidence, that the running of the clear track scheduled passenger train on its own time at a speed of 25 miles an hour, through a fog, constituted negligence for which defendant was responsible.

regardless of whether confusion resulted from the language of the annulment order, and regardless of whether contributory negligence actively operated to place Richardson in his position of peril. Abstractly correct statements of rules of law are not always correct as instructions to a jury, and may be prejudicial, depending upon the facts of each particular case. Kingfisher Nat. Bank v. Johnson, 22 Okla. 228, 98 Pac. 343; Obenchain & Royer v. Roff, 29 Okla. 211, 116 Pac. 782; C., R. I. & P. R. Co. v. Beatty, 42 Okla. 528, 141 Pac. 442; Oklahoma Portland Cement Co. v. Brown, 45 Okla. 476, 146 Pac. 6; St. L. & S. F. R Co. v. Bruner, 56 Okla. 682, 156 Pac. 649. It is concluded that the giving of paragraph 10 of the instructions, under the facts disclosed by the record, and in the form employed, was prejudicially erroneous.

Complaint is also made by defendant of paragraph 5 of the court's instructions, defining contributory negligence, and in refusing to give defendant's requested instruction on the same issue. It is sufficient here to state that the instruction requested was in the language frequently approved by this court, while the instruction as given omitted one of the essential elements of contributory negligence. Error was thus committed.

Complaint is made that the verdict is excessive. but in view of another trial, that matter will not be now considered.

For prejudicial error in failing and refusing, over defendant's objections, to define the issues as made by the pleadings, and in sending to the jury room the copy of the pleadings over objections and exceptions of defendant, and for erroneously giving to the jury paragraph 10 of the instructions, the judgment of the trial court is vacated, and the cause remanded for a new trial.

By the Court: It is so ordered.

Note.—See under (1) 39 C. J. p. 1124 §1319; p. 1160 §1345. (2) 4 C. J. p. 1036 §3016; 38 Cyc. pp. 1608, 1610; 14 R. C. L. p. 727: 3 R. C. L. Supp. p. 268; 4 R. C. L. Supp. p. 914. (3) 29 Cyc. p. 653: 38 Cyc. p. 1632.