## SCHAFF, Rec., v. RICHARDSON, Adm'x.

No. 18702.   Opinion Filed May 27, 1930.

Rehearing Denied June 17, 1930.

M. D. Green, John E. M. Taylor, and Eric Haase, for plaintiff in error.

Tautges & Wilder, Robert J. McDonald, and Thurman S. Hurst, for defendant in error.

LESTER, V. C. J.   This case is here on second appeal. See Schaff, Receiver, v. Richardson, Adm'x, 120 Okla. 70, 254 Pac. 496.

The plaintiff below recovered judgment against the defendant at the first trial, which resulted in the cause being appealed to this court and that judgment reversed. On the second trial the plaintiff again recovered judgment, from which the defendant has appealed. The parties will be referred to as they appeared in the trial court.

The material facts and issues are set out in the opinion on the first appeal, and it will suffice to say that the action was brought to recover damages on the account of the death of Samuel B. Richardson, who at the time of his death was a brakeman, and that his death was caused as a result of a collision between the train of the deceased, which consisted of an engine and caboose running between Muskogee and Tulsa, and being numbered as extra No. 613, and defendant's regular scheduled passenger train, that usually ran between Muskogee and Osage, but upon this occasion train 224 originated at Tulsa, and at the time of the collision was en route to Muskogee.

The main issues in this case include certain propositions relating to the issuance of train orders delivered by the train dispatcher of the defendant company to the crew of extra train No. 613, said orders being in substance as follows:

"Eng. 613 run exa. Muskogee to Tulsa has right over No. 84 Wybark to Tulsa.

"No. 3 wait Wybark until 4:10 a. m.

"Overdue Tulsa Divn. trains Wybark 2:05 a. m. have arrived and departed.

"Overdue trains Muskogee 2:05 a. m. have arrived and departed except No. 3."

At the same time that the above running order was delivered to conductor of extra No. 613, he was also given an order annulling certain trains on the division, being train order No. 2, standard form 31, and reading:

"Nos. 227, 229, 226, 230 of July 19th annulled between Wybark and Tulsa.

"No. 84 and No. 81, No. 224 and No. 225 of July 19 annulled between Tulsa and Osage."

The first proposition argued by the defendant is that:

"The decision on the first appeal of this case is unjust to the defendant in several particulars, and that some additional facts were brought out in the second trial that were not involved in the first appeal, and for these reasons the decision of the former appeal is not binding in this appeal."

To sustain the contention the defendant cites a number of Oklahoma cases holding that, "Where a gross or manifest injustice has been done by its former decision, or where the mischief to be cured far outweighs any injury that may be done in the case by overruling a prior decision."

This court on the first appeal announced a rule applicable to the annulment order issued by the train dispatcher and which constituted the principal issue on the second appeal, Schaff v. Richardson, supra, and is as follows:

"In an action for personal injury resulting in death, allegations of negligence in handling, operating, and controlling defendant's 'line and system of railroad,' followed by proof that a certain train was annulled between two designated stations on the line, but that said train was not mentioned in an order annulling trains between such points, the train so annulled but omitted from the annulment order being then dispatched in the opposite direction on the regular schedule of one of the trains named in the annulment order, resulting in a collision with the train on which deceased was working as a rear brakeman, were sufficient to raise an issue of fact for determination by a jury on the question of defendant's negligence, regardless of whether there was negligence on the part of the crew of either of the trains at the time of the collision."

We think that, under the facts and circumstances that are shown to exist just prior to the collision and the character of train orders by the train dispatcher delivered to the crew of the deceased, it became a question of fact for the jury to determine as to whether said orders misled the train crew on extra train No. 613. Ordinarily an unambiguous instrument must be construed by the court, but when there are other facts known to all parties which taken in conjunction with a written instrument may lead to a misunderstanding, such instrument is not within the rule.

In 38 Cyc. 1524, the rule is stated to be:

"However, it is generally held that the rule that the interpretation of written instruments is for the court, does not apply where the writing is ambiguous and must be solved by extrinsic unconceded facts, or where the dispute is not as to the legal meaning of the documents, but as to their tendency to prove one side or the other of an issue of fact and different inferences may be fairly drawn from them as to what truth is. Under such circumstances it is for the jury to say what is the proper inference."

We do not think that any fact was introduced at the second trial that would justify a different application of the rule of law set out in the former appeal.

The second proposition argued by the defendant is:

"The annulment order was not indefinite or uncertain, or otherwise defective; its construction was for the court; there was no negligence in the issuance thereof, and the court erred in submitting these questions to the jury and refusing defendant's offered testimony and requested instructions."

A. C. Stemple testified substantially as follows:

"I live at Parsons, Kan., and am locomotive engineer for defendant and have been since 1906, and was engineer of deceased's crew, with engine extra 613 and caboose, called to leave Muskogee for Tulsa, and we reported for work some time between 1.30 and 2.30 a. m., July 19. Conductor Daharb gave me our orders, Exhibits A and B, and there were other orders, including slow orders. At the time Exhibit A and B were delivered to me I was in the locomotive cab with fireman and head brakeman. Conductor got on locomotive and delivered the orders and I took them and read them to him in the presence of the fireman and head brakeman, and then folded them up and put them in my pocket. I presume I read the annulment order, Exhibit A, to the conductor, brakeman, and fireman as it is written, as far as I know I did, and that was also true of Exhibit B. I don't recall any discussion about them.

"I understood from the annulment order, Exhibit A, that all those trains were annulled between Tulsa and Muskogee, including train 224. I did not know why our

crew was going to Tulsa and had no information as to where the washout was, except that it was between Tulsa and Osage. We had no discussion about train 224. It is four miles from Muskogee to Wybark, and about 49 miles from Wybark to Tulsa, and about 34 miles from Tulsa to Osage.

"I was familiar with the operation of train No. 224, which was one of those shown on my time card. I was not expecting to meet it. I thought I had an annulment of it on account of the annulment order, Exhibit A. There were five or six sidings between Wybark and Alsuma where we could head in and get out of the way of other trains. I was not given any orders to take siding at any particular place, and it is not customary to get an order to take a siding for a superior train unless you are running late. No. 224 was a superior train to our extra train. Had I understood that No. 224 was going to run between Tulsa and Muskogee I would have taken a siding for it. * * * I received no further orders that No. 224 would originate at Tulsa that day and go to Muskogee."

A. C. Stemple, as shown by the evidence, was a locomotive engineer of long experience. and as herein shown he had no knowledge that train 224 originated at Tulsa would return to Muskogee; that train No. 223, that ran west from Muskogee to Osage, was train No. 224 on its return from Osage to Muskogee, and that having notice of the annulment of train No. 224 from Osage to Tulsa and not being furnished with any information that train No. 223 had stopped at Tulsa and was to return as train No. 224, thereby misled him.

It was further shown by the evidence that a copy of the annulment order relating to train No. 224 was found in the caboose of the extra train No. 613, where the deceased had evidently placed it. No one had a greater interest in being correctly informed as to the clearance of the track than members of the train crew No. 613, and it is evident that the information furnished them by the annulment order misled them.

Proposition No. 3 advanced by the defendant is similar to that of proposition No. 2.

Proposition No. 4 is that "the trial court erred in admitting testimony relating to other train orders given the crew of extra No. 613."

Where it is charged that a certain act constitutes negligence, any additional and independent fact which may shed light on the main transaction may be shown. All of the train orders that related to the direction of crew No. 613 that where within the

knowledge of the defendant and received by the train crew were admissible, in order to sustain plaintiff's contention that train crew No. 613 was misled.

It was not necessary that the plaintiff set forth in his petition matters that would constitute evidence in the cause.

It is admitted by the defendant that it was customary to dispatch and deliver several train orders to one train crew at the same time.

The 4th proposition is that the court erred in refusing to define the issues as to the duties and negligence of the deceased brakeman and admitting and refusing evidence thereon and giving and refusing requested instructions.

The defendant in its brief, at page 119, states:

"The rules as introduced through witnesses A. C. Stemple (40-89, C.-M.) and J. H. Henley (252-259, C.-M.) required each employee, including Richardson, to have a copy thereof and also to have a copy of the current time table, and to be conversant with the rules and instructions and time card, and to render all assistance in their power in carrying out such rules and instructions, and to report violations thereof. Under these rules, extra No. 613 was an inferior train to passenger train No. 224, and the rules required the train crews of inferior trains to keep those trains out of the way of superior trains, and to clear the track for them at least five minutes. In connection with the testimony of the witness Charles D. Schwetke, there was introduced the application for employment of the deceased, Richardson, with his signature thereto, by which he acknowledged receipt of a copy of the rules and regulations and amendments thereto, and of the current time table, and agreed to familiarize himself with and observe them and to keep advised as to further amendments.

"By the testimony of conductor Frank Samuel Daharb (222-227, C.-M.), it was shown that deceased, Richardson, had been furnished with a copy of the annulment order, which was read to him, and conductor Daharb then left him reading it, and after the accident this order was found on a hook in the caboose, where it was the duty of Richardson to place it. It was also shown by conductor Daharb that a copy of the current time table was in the caboose and Richardson had access to it. He was therefore familiar with the rules and instructions and the train orders and the time card, and must have known that passenger train No. 224 was a regular time card scheduled train, and that it was annulled only between Osage and Tulsa, and would run on schedule time between Tulsa and Muskogee, and that his

train was an inferior train and would meet it between those points.

"According to the testimony of the witnesses J. H. Henley (252-259, C.-M.) and James B. McCaffrey (261, C.-M), it was deceased Richardson's duty as rear brakeman to become familiar with his duties, and with the contents of orders issued to his train, and although he was subordinate to the conductor, if the conductor's orders or actions conflicted with the rules and instructions, it was his duty to call attention to that ract, and the purpose of having the conductor read the train orders, including the annulment order, to him was so that he, as well as the other members of the crew, might have full knowledge of the instructions issued to their train and their rights with reference to other trains."

The court gave the following instructions:

"No. 15. You are instructed that passenger train No. 224 had the right of way over extra 613 at the time of the collision, and that it was the duty of those in charge of said extra 613 to keep said train out of the way of said passenger train No. 224."

"No. 18. You are instructed that if you find that brakeman Richardson was guilty of any negligence and that his negligence was the proximate or direct cause of his death, then plaintiff cannot recover, regardless of whether or not the other employees of the defendant receiver were guilty of negligence."

"No. 19. You are instructed that it was the duty of brakeman Richardson to call the attention of the members of his crew to any violation by them, observed by him, or which he might have observed by the use of ordinary care, of any rules or orders of the defendant receiver with reference to the running and handling of his train."

It appears that the court not only permitted the introduction of the written rules of the defendant, which should govern the duty of the deceased, but admitted oral testimony on the part of the defendant on that issue. It is our opinion that the evidence submitted by the defendant on the duty of the deceased, together with the instructions given thereon, fairly presented that issue to the jury.

The last proposition presented by the defendant is that the damages were excessive.

The jury assessed the damages at $15,000. The deceased was 44 years of age and had a life expectancy of 25 and 27/100 years and was drawing from the defendant close to an average of $200 per month, and he contributed about $165 per month of that amount to the support of his wife and family, and he had been employed by the defendant company for several years.

In the case of City of Sapulpa v. Deason, 81 Okla. 51, 196 Pac. 544, the deceased had an expectancy of 28 years and was earning $20 per week, the jury assessed the damages at $25,000, and this court reduced the amount of damages to $15,000. The instant case presents a stronger state of facts in favor of the amount assessed as damages than in that case.

Upon close examination of the record herein, we fail to find any substantial error committed by the trial court which would justify a reversal of the judgment, and the same is, therefore, affirmed.

CLARK, HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. MASON, C. J., and HUNT and RILEY, JJ., absent.

Note—See under (2) anno. 1 A. L. R. 1268; 2 R. C. L. p. 224; R. C. L. Perm. Supp. p. 393. (3) anno. L. R. A. 1916C, 820; 48 A. L. R. 817. See "Appeal and Error," 4 C. J. §3075, p. 1093, n. 77. "Death," 17 C. J. §235, p. 1350, n. 7. "Master and Servant," 39 C. J. §1345, p. 1162, n. 39.