## LAMBARD-HART LOAN CO. v. SMILEY.

No. 15315—Opinion Filed Sept. 15, 1925.

Rehearing Denied Dec. 15, 1925.

**Trial—Erroneous Submission of Pleadings to Jury.**

Where the pleadings are voluminous and involved, and the court does not state the issues in its instructions to the jury, it is reversible error to submit the pleadings to

the jury for them to determine what the issues are.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from Superior Court, Pottawatomie County; Leander G. Pitman, Judge.

Action by H. C. Smiley against Lambard-Hart Loan Company, a corporation. Judgment for plaintiff, and defendant appeals. Reversed.

Abernathy & Howell, for plaintiff in error.

Wyatt & Waldrep, for defendant in error.

Opinion by RAY, C. This judgment must be reversed upon the ground that the issues were not fairly submitted to the jury. The pleadings were submitted to the jury for their determination of what the issues were.

Plaintiff's petition contains three causes of action, all based upon an oral contract. In the first cause of action it was alleged that plaintiff and defendant had entered into an oral contract, by the terms of which plaintiff was to remain in the employ of the defendant at a salary of $100 per month, and, in addition thereto, that if plaintiff should increase the insurance business of the defendant 10 per cent. above the previous year, as additional compensation, he should receive 50 per cent. of the increase in the insurance business after deduction therefrom of his salary; that at the end of the year, plaintiff had increased the insurance business as agreed, and the increase over and above the salary amounted to $500, and that he was entitled to receive the sum of $250.

In the second cause of action, it was alleged that in the same oral contract, it was agreed that plaintiff should receive one-half of the commission derived from the sale of real estate that might be negotiated by the plaintiff during the life of his contract; that while working under the contract he made a sale of real property for defendant, from which sale the defendant earned and received a commission of $750, of which sum the plaintiff was entitled to receive one-half, but that the defendant had failed and refused to pay plaintiff his part of his commission, except the sum of $125; and that there was due him as commission from the sale the sum of $250.

In the third cause of action it was alleged that by the terms of the same oral contract it was agreed that plaintiff should have one-half of the commission earned on all loans made through his efforts, and that when the property referred to in the sec-

ond cause of action was sold, a loan was negotiated through the plaintiff, from which the defendant received a commission of $105, and that the plaintiff was entitled to receive one-half of the commission of $105, to wit, $52.50, which defendant refused to pay.

The defendant entered general denial to each of the separate causes of action, and filed its cross-petition against the plaintiff, containing three separate causes of action. In the first cause of action it was alleged that about the 1st day of September, 1919, plaintiff and defendant entered into an oral contract by the terms of which plaintiff agreed to work in the insurance department carried on by the defendant and in the agency for the sale of real estate, and agreed to receive in full payment for his services 50 per cent. of the commission which defendant would become entitled to receive on all policies secured and written as a result of the solicitation of the plaintiff, and 50 per cent. of the commission to which defendant would be entitled as a result of the sales of real estate made by defendant; that the agreement continued until the 1st day of December, 1919, at which time the contract was modified by the defendant agreeing to pay plaintiff $25 per month in addition to the commissions for securing insurance business, and for the sale of real property; that from the 1st day of December, 1919, until the first of March, 1920, in addition to the $25 per month, the defendant paid the plaintiff $961.50; that during that period defendant earned in commission, outside of his $75 as salary, the sum of $722.97; that during said period defendant paid to plaintiff, and plaintiff received, prior to March, 1920, the sum of $258.53 more than plaintiff had earned, and that he was indebted to the defendant in the sum of $258.53. For its second cause of action, the defendant alleged that about the 1st day of March, 1920, the original contract was modified by the defendant agreeing to pay the plaintiff the sum of $100 per month, in consideration of which plaintiff agreed to devote all his time, energy, and attention to to the insurance business being operated by the defendant, and agreed to use his best efforts and labor to increase the earnings and profits of the insurance business, and it was agreed that in the event the insurance business was increased more than 10 per cent. above the average earnings and profits made during the three preceding years, defendant would pay plaintiff 50 per cent. of the excess of profits from the business remaining after paying all expenses, including the

salary of $100 a month to the plaintiff in excess of 10 per cent. above the average profits for the last preceding years; that the contract as modified continued in force until the 1st of January, 1921, when it was terminated by mutual consent; that between the 1st day of March, 1920, and the 1st day of January, 1921, the defendant paid plaintiff all of his salary, and in addition to the salary, at the plaintiff's special instance and request, paid plaintiff the full sum of $1,346.13; that during the period from March 1, 1920, to the 31st day of December, 1920, the insurance business of defendant showed a net profit of $1,317.49 more than 10 per cent. of the average profits during the three years last preceding, and that the plaintiff was entitled under his contract to a credit of $658.75, being one-half of $1,317.49; that the plaintiff was entitled to receive during that period from March 1st to December 31st, the sum of $1,158.75 and no more; that during said period plaintiff received from defendant $687.40 more than he was entitled to receive, and that he was, therefore, indebted to defendant in the sum of $687.40.

For its third cause of action against plaintiff, defendant alleged that during the period beginning September, 1919, and ending the first day of March, 1920, the plaintiff caused to be issued certain fire insurance policies, particularly set out, to persons who did not desire or request such insurance and for which no payment was made, to the loss of defendant in the sum of $62.25. On its three causes of action, defendant prayed judgment against plaintiff for $1,008.18. To this cross-petition plaintiff answered by general denial.

The general rule is as stated by Blashfield, in his work on Instructions to Juries, as follows:

"In submitting the question of fact, it is necessary that the issues involved in the case should be stated to the jury, and what issues are raised by the pleading is a question of law which it is the exclusive province of the court to determine."

Where the pleadings are voluminous, as in this case, and so involved as to render it doubtful whether the jury could clearly determine the issues, they should be stated to the jury in the instructions. The issues were not defined in the instructions, and the pleadings were given to the jury for their determation as to what the issues were over the objections of the defendant.

The judgment is reversed, with directions to grant the defendant a new trial.

On Rehearing.

Opinion by LOGSDON, C. This cause was reversed in an opinion by Ray, C., filed September 15, 1925, for the reason that the trial court permitted the jury to take the pleadings to the jury room and to determine therefrom what the issues were. This was the sole question determined by the opinion and is the sole question raised on the petition for rehearing. In view of certain statements made by the trial court and preserved in the record, it is considered proper on this petition for rehearing to supplement the original opinion in order to determine this question of practice in the trial courts.

At page 173B of the record, the trial court stated: "My custom is to permit all pleadings to go to or to be considered by the jury." On the next page the court said: "Gentlemen of the jury, I am going to submit to you the pleadings." Defendant objected and reserved its exception.

The petition in this case covers more than three pages of the printed brief, while the answer and cross-petition covers nearly seven pages thereof. These pleadings were correctly denominated in the original opinion as "voluminous and involved." If a trial judge, trained in construing and determining the meaning and effect of legal instruments, is unable to say what issues are raised by the pleadings in a case and to clearly define such issues, how is a jury, composed of laymen, to be expected to hazard a shrewder guess? Whether an issue of fact is raised by the pleadings, or what issues are so raised, is a question of law for determination by the court, and our statute does not permit a trial court to shift this responsibility to the shoulders of jurors. Comp. Stat. 1921, sec. 532. As was said by this court in Midland Valley R. Co. v. Bailey, 34 Okla. 193 (sp. cit. 198), 124 Pac. 987:

"The law is fixed, is stable, is not subject to change according to the variable opinions of any particular twelve men, but represents the wider consensus of opinion of the entire people, and it is the peculiar function of the court to know the law and to inform the jury, so that in the exercise of its duty of applying the law to the facts it may have a stable rule of action to aid it in the administration of justice, and the law of this state does not relieve the courts of this duty."

In Myer v. Moon (Kan.) 26 Pac. 40, the court said:

"The practice of referring the jury to the pleadings in order to determine in whole or in part the issues of the case is not to be commended. It is the province of the court to determine the issues, and state them to the jury, and not leave them to ascertain the effect of the pleadings or the issues which they present."

That same court in the case of Chicago, R. I. & P. Ry. Co. v. Martin, 53 Pac. 463, stated:

"It is said that it is the duty of the court to construe the pleadings, and to state to the jury the issues of fact to be tried by them, and that it is error to send pleadings into the jury room for the jury to read. This contention is sound, but it does not avail the plaintiff in error, for the court instructed the jury fully and clearly as to the issues to be tried, and the record does not show that the pleadings were, in fact, taken by the jury to their room."

In Thompson's Treatise on the Law of Trials (2nd Ed.) vol. 2, sec. 2314, that author states the proper practice thus:

"It is the duty of the court to determine what are the issues, and to state them to the jury, and it is error to refer them to the pleadings to determine the issues, in whole or in part."

And in section 2582, the same author says:

"Properly, the jury have nothing to do with the pleadings, and argument directed to the pleadings is addressed to the court. It is the duty of the court to state the issues, and it is error to refer the jurors to the pleadings to find what the issues are. The pleadings are often drawn in technical language, which might not be correctly understood by persons unlearned in the law, therefore, it would seem on principle, to be a proper rule of practice not to send the pleadings out with the jury."

Pleadings are usually drawn most favorably to the pleader, and the case is rare where the proof supports all allegations fully. Generally they are argumentative and abstruse, rather than succinct and didactic. The result is inevitable that where pleadings are permitted to go to the jury room, arguments, which are proper to be considered only by the court, are vicariously presented to the jury in secret, and the better pleader is apt to present the stronger and more persuasive argument. To require the losing party under such circumstances to show prejudice to his cause resulting therefrom would be to cast on him an insupportable burden and to require of him a legal impossibility. The jury should be kept free from even vicarious intrusion after the cause is submitted.

While this question of practice appears to be here presented to this court directly for

the first time, it has been incidentally involved in several earlier cases, and in each instance, though not a decisive question, the practice of sending pleadings to the jury room, or of copying the pleadings verbatim in the instructions, has been disapproved. Independent Cotton Oil Co. v. Beacham, 31 Okla. 384, 120 Pac. 969; Seay v. Plunkett, 44 Okla. 794, 145 Pac. 496; Dane v. Bennett, 51 Okla. 684, 152 Pac. 347; Schmucker v. Clifton, 62 Okla. 249, 162 Pac. 1094; Newton v. Allen, 67 Okla. 73, 168 Pac. 1009.

It follows from what has been said that it is improper practice for a trial court to permit the pleadings in a case to be taken by the jury in its retirement, and where such action by a trial court is objected to and proper exception reserved, prejudicial error results.

For the reasons herein stated, the petition for rehearing should be and is in all things denied.

By the Court: It is so ordered.

Note.—See under (1) 38 Cyc. p. 1608.