**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, A Corporation, Plaintiff in Error,**

v.

**James W. JONES, Defendant in Error.**

**No. 38499.**

Supreme Court of Oklahoma.

Feb. 16, 1960.

Rehearing Denied May 31, 1960.

Application for Leave to File Second Petition for Rehearing Denied Aug. 2, 1960.

W. A. Thie, Denison, Tex., R. T. Stinson, Durant, Franklin & Harmon, Oklahoma City, for plaintiff in error.

John Allen Phillips, II, Durant, Ratner, Mattox & Ratner, Wichita, Kan., for defendant in error.

BLACKBIRD, Justice.

This appeal involves an action commenced by defendant in error, as plaintiff, to recover damages against plaintiff in error, as defendant, for personal injuries he suffered while using a jack under an insulated tank car in defendant's railroad yard in Oklahoma City. Our continued reference to the parties will be by their trial court designations.

At the time of the accident on September 28th, 1955, plaintiff had been in defendant's employ as a car inspector and repairman for several years. The tank car involved had been routed to what is referred to as the repair, or "rip", track, where plaintiff was working, for the repair of a broken spring, without first being emptied of its contents. On the assumption that the tank car was empty, plaintiff undertook to elevate the end of the car where the broken spring was located, by using one of defendant's 35-ton hand jacks, rather than its 50-ton power type of jack ordinarily used by defendant's repairmen to elevate filled or loaded cars. After plaintiff and his helper and fellow-employee, West Doughty, apparently had the weight of the car partially suspended on the jack, but had depressed the jack handle clear to the ground without being able to raise the car any higher, they concluded that the car was filled (rather than empty) and were trying to lower the car, apparently for the purpose of getting that jack out from under it and replacing said manual, or hand, jack with one of the heavier and more powerful 50-ton power jacks. To lower, or "jack down", the head or top of the manual jack, plaintiff threw the lever to reverse its action, but he and Doughty were unable, by pushing down on the jack handle, or bar, to make the jack head start descending. He thereupon concluded it would be necessary to "dog" the jack down, and for this purpose he momentarily turned loose of the jack handle, and turned around to get what he called a "buggy bar" to stick in the jack mechanism for the purpose of tripping the dog. Just at that instant the jack head suddenly slipped down, throwing the jack handle toward, and hitting, plaintiff. The impact of the blow from the jack handle knocked plaintiff to the ground, where his head hit one of the repair tracks' rails, rendering him unconscious and inflicting upon him various painful and disabling injuries, including brain concussion and a broken jaw.

In the petition plaintiff thereafter filed to commence this action in June, 1957, he alleged, among other things, in substance, that his employment with the defendant railroad company was related to interstate commerce, and he invoked application of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. to the action. The respects in which defendant was alleged to have been negligent in causing the accident, and plaintiff's resulting injuries, were as follows:

"(a) Failure of defendant to furnish plaintiff a reasonably safe place to work in that plaintiff was instructed to use equipment about which defendant knew or should have known to be in unsafe condition.

"(b) Failure of defendant properly to repair said equipment in order that it would fulfill the purpose for which it was designed.

"(c) The act of defendant's agent, one master mechanic, the superior of plaintiff in instructing plaintiff to use equipment which was known or should have (been) known to be unsafe and would not fulfill or properly accomplish the function for which it was designed.

"(d) Defendant knew or should have known that using equipment such as said jack would create a dangerous situation and might likely result in injury to the plaintiff or other employees of defendant.

"(e) Failure of defendant to furnish plaintiff reasonably safe equipment.

"(f) Failing and neglecting to inspect the jack prior to allowing it to be used by plaintiff.

"(g) Failing and neglecting to warn or inform plaintiff of the tank car being filled rather than empty.

"(h) Failing and neglecting to warn plaintiff of the faulty condition of the jack."

The damages plaintiff sought totalled $100,543.51, itemized in his petition as $1,543.51, for lost earnings in the past, $60,000 for permanent disability in the future, and $39,000 for "past, present and future pain and suffering, medical and hospital expenses."

Defendant's answer consisted of a general denial and allegations charging plaintiff with both primary negligence and contributory negligence.

At the close of the trial, the jury returned a general verdict for plaintiff in the sum of $39,000 and costs of the action. Judgment was entered accordingly, and, after the overruling of defendant's motion for a new trial, it perfected this appeal.

In the first proposition defendant urges for reversal, it charges, in substance, that by the so-called "alias" summons purportedly issued for it in this case, the trial court never obtained jurisdiction over it, and therefore the court's order overruling defendant's motion to quash it was error. These charges are based upon the fact that the court ordered the first summons quashed, and without being directed in said order, or being otherwise authorized by the court to do so, the court clerk issued the alias summons pursuant only to a praecipe for such a summons filed by plaintiff's attorney. Defendant's theory is that under our statutes, Title 12 O.S.1951 § 151 et seq., and particularly section 157 of said title, the only instance in which the clerk may issue an alias summons, without an order of the court authorizing him to do so, is where the original summons has been returned "not found" or "not summoned". Defendant says this court has never passed upon the question thus presented, and cites the case of Medical College of Georgia v. Rushing, 124 Ga. 239, 52 S.E. 333, in support of its position. The latter was an appeal from the City Court of Richmond County, Georgia. Not only was that court's process governed by statutes different from those governing district court process in Oklahoma, but in that case the second process was issued without (as far as the opinion shows) the filing of a statutory direction, or request, therefor comparable to Oklahoma's praecipe and without any action taken by the court, or any officer thereof that was regarded as nullifying the original process that had been previously served. Defendant cites the case of Kansas, Oklahoma & Gulf Ry. Co. v. Collins, 207 Okl. 567, 251 P.2d 178, and the therein cited cases of Keaton v. Taylor, 114 Okl. 167, 245 P. 56, and Southern Surety Co. v. Jones, 90 Okl. 285, 214 P. 727, in which this court upheld the issuance of alias summonses without specific authorization by court order; but it attempts to distinguish those cases from the present one by calling attention to the fact that in none of them, as in the present case, had the trial court ruled upon the validity of the original summons before the alias summons was issued. We think this difference in fact in no way affects the principle to be applied. The controlling factor recognized in all of these cases was that the original summons was a nullity insofar as service was concerned and thus had no more effect than if, within the wording of section 157, supra, the summons had been returned: "Not summoned." The early case of Williams' Adm'rs v. Welton's Adm'r, 28 Ohio St. 451, cited in Walker v. Stevens, 52

Neb. 653, 72 N.W. 1038 (see 2nd paragraph of its syllabus), demonstrates the fallacy of the argument that such a statutory provision restricts the issuance of an alias summons to those instances in which the original summons is returned "not summoned". Therein it was said (28 Ohio St. at page 470) that if this were true, then, if the original summons was never returned, or was lost or destroyed, or filed without any return, no other summons could ever be issued; and we would be lead back "to the era of technicality from which the code was intended to relieve the practice." In the present case, the court's order quashing the original summons just as effectively nullified it for the purpose of valid service on the defendant, as if no summons had ever been issued, and we see no sound reason in principle why the alias summons thereafter issued cannot just as reasonably be regarded as an original summons issuable on praecipe only, as the alias in the foregoing Oklahoma cases. We therefore hold that the trial court's order overruling defendant's motion to quash said alias summons was not error on the ground asserted.

 With obvious reference to the trial court's alleged errors in overruling its demurrer to plaintiff's evidence and its motion for a directed verdict, defendant asserts, in its Proposition II, that the evidence fails to show it guilty of actionable negligence. The underlying fallacy extending throughout defendant's argument under this proposition is that it overlooks the significance of the undisputed evidence that the jack, plaintiff and his fellow-employee used, was defective. (The defendant's only witness on this point, Floyd H. Crank, who was its Oklahoma District Master Mechanic, corroborated plaintiff's evidence in establishing the defectiveness of such a jack, as plaintiff was using—that "wouldn't reverse under a load * * *"). And, the matter of whether or not the car (on which plaintiff and Doughty were attempting to use the jack) was filled, or empty, was never shown to have any bearing upon the jack handle's hitting plaintiff as it did in this case. For all that the record shows, the jack would have acted the same way whether the car had been filled or empty. There was evidence tending to show that plaintiff discovered, before using the jack, that defendant's Parsons, Kansas, shop had not repaired the jack as it had been supposed to do, and that plaintiff previously had had to "dog" such jacks down with a buggy bar; but there is no indication that he had over had a jack suddenly slip down, without dogging, before; and whether or not he should have foreseen that such a thing would happen in this instance was for the jury to determine. It was undisputed that Crank (plaintiff's superior, but not immediate supervisor) had, previous to the accident, inspected the jack at plaintiff's instance and had thereupon ordered plaintiff "to go ahead and use * * (it) * * *", despite the belief, plaintiff expressed to him, that, though the jack had been returned from Parsons to the Oklahoma City yard repainted, it had not been repaired. Because of the foregoing facts, and others unnecessary to mention, defendant's arguments omitting any mention of them, and emphasizing other evidence tending to show that ordinarily plaintiff was free to choose, or select, either the 35-ton jack or the 50-ton jack in elevating cars for repair, and seeking to show that the proximate cause of the accident was plaintiff's claimed negligence in not ascertaining whether or not the car was filled or empty, before attempting to raise it, falls far short of establishing that there was no competent evidence to go to the jury, of defendant's negligence in causing the accident. On the contrary, we are convinced that upon consideration of the evidence most favorable to plaintiff's side of the case, and of the reasonable inferences to be drawn therefrom, the trial court could not have correctly concluded that all reasonable men would agree that no failure of duty on defendant's part was the proximate cause of the accident. When gauged by this test (see the second

paragraphs of the respective syllabi in Chickasha Cotton Oil Co. v. Hancock, Okl., 306 P.2d 330, and Hudson v. Blanchard, Okl., 294 P.2d 554), it is clear that the trial court acted correctly in overruling defendant's motion for a directed verdict and submitting the cause to the jury.

In its argument under its Proposition III, defendant urges the trial court erred in allowing plaintiff's counsel, during his closing argument, over defendant's objection, to write figures on a blackboard in an effort to persuade the jury that its verdict should include a substantial sum for plaintiff's "pain, suffering, embarrassment and humiliation." Defendant's Propositions IV and V deal with various alleged errors of the court in instructing the jury. The underlying weakness common to all defense arguments under these propositions is that they apparently overlook the reality that all errors of practice and procedure in this jurisdiction are subject, on review, to application of the harmless error doctrine. See Title 12 O.S.1951 § 78, Bedwell v. Williams, Okl., 330 P.2d 359, and Badgwell v. Lair, Okl., 325 P. 2d 968.

What plaintiff's counsel wrote on the blackboard quite naturally does not appear in the record, but defense counsel cite, as its equivalent, portions of counsel's summation in which he computed, or converted, plaintiff's life expectancy of 23.8 years into 8,687 days, or 208,488 hours, and told the jury in substance, that he would not "go through" what plaintiff had been through for $5 per hour and that "20¢ an hour would be ridiculously low" for that item of plaintiff's damages. Since the verdict was a general one for the lump sum of $39,000 for all of plaintiff's various items of damages, including permanent disability, it is obvious that the jury did not allow him compensation for pain, suffering, embarrassment and humiliation at the rate of 20¢ per hour and it is improbable that they measured it at any other hourly, or daily, rate. Nor is there any indication anywhere else in the record that the jury was persuaded, by counsel's argument, to adopt any such ratable method of assessing such elements of his damages. If we agreed with the opinions of some other courts (cited by defendant's counsel) as to the impropriety, and great *potential* for producing excessive verdicts, of using a blackboard before a jury as plaintiff's counsel did, still we would have to recognize, under the harmless error doctrine, and, in accord with those same opinions, that the test of prejudice to defendant, in an error such as the one complained of, is: *Whether or not it resulted in an excessive verdict?* Nowhere in defendant's argument does it claim, or seek to demonstrate, that plaintiff's recovery was excessive on the basis of the undisputed evidence as to the painful and permanently disabling nature of his injuries and the detriment they have caused him and will continue to cause him, the balance of his natural life. Without it appearing that the alleged error resulted in prejudice to defendants, its counsel's arguments amount to no more than an abstract and hypothetical discussion of the *potential* evils of using a blackboard as plaintiff's counsel did, and, thus they are deficient in showing ground for reversal. Consequently, we must conclude that if such conduct of counsel was error, it was harmless, under the circumstances of this case. City of Tulsa v. Hodge, Okl., 293 P.2d 344.

Under its Proposition IV, defendant contends that the trial court erred in the way it stated the issues of the case in its instructions. This contention is based on the fact that the introductory part of the court's instructions virtually repeated the allegations of plaintiff's petition. It also contained the substance of defendant's answer and plaintiff's reply. The court's first-numbered instruction told the jury, however, that the allegations of the pleadings did not constitute "any part of the proof of fact alleged * * *", except where an alleged fact "was specifically admitted by the other party." The court then gave many other instructions defining and explaining the issues to be determined in the case. In such situation, the cases cited by defendant, including Schaff v. Rich-

ardson, 120 Okl. 70, 254 P. 496, and Lambard-Hart Loan Co. v. Smiley, 115 Okl. 202, 242 P. 212, are inapplicable; and we are governed by the principles followed and enunciated in Parkade Corp. v. Chehock, Okl., 312 P.2d 932; Newton v. Allen, 67 Okl. 73, 168 P. 1009; and Seay v. Plunkett, 44 Okl. 794, 145 P. 496. In the latter case, it was held:

> "Where the court in other paragraphs of the charge has defined to the jury what the issues are between the litigants, a judgment will not be reversed merely upon the grounds that the court set out the pleadings in full in his instructions to the jury, unless it is made to appear that the rights of the parties were prejudiced thereby."

We have examined the complete body of the trial court's instructions in the present case and are of the opinion that, as a whole, they stated the issues of this case clearly enough that their introductory part was not prejudicial error. In this connection notice Otis Elevator Co. v. Melott, Okl., 281 P.2d 408, 415.

In the first part of their argument, under defendants Proposition V, counsel assert that "obviously the trial court's instructions as a whole were clearly in plaintiff's favor * * * constituting virtually a peremptory instruction in favor of plaintiff." They cite nothing to support this broad assertion, however, except the fact that the trial judge used more of the instructions requested by plaintiff than of those requested by defendant. Such argument must therefore be regarded as purely partisan, presumptive, and unworthy of consideration as ground for reversal.

Under subdivision "A" of defendant's Proposition V, there is cited the duty of the trial court to properly instruct the jury, on his own initiative, as to the decisive issues of a case (Liberty Nat. Bank of Weatherford v. Semkoff, 184 Okl. 18, 84 P.2d 438); and counsel says defendant was entitled to have its theory submitted to the jury with the same emphasis with which plaintiff's theory was submitted. After reviewing the instructions, however, the only deficiencies counsel specifically allege in them is their failure to point out "that defendant was not an insurer of plaintiff's safety, that the burden was upon plaintiff to show by a preponderance of the evidence some negligence that was a proximate cause of his injury, and that where he was his own boss as to the method of performing the work assigned to him, defendant could not be charged with negligence, where a safe method was provided, and where plaintiff knowingly and voluntarily chose a more dangerous method." Upon examination of the record of the instructions the trial court gave, we find that its Instruction "No. 2" told the jury that:

> "The burden of proof is upon the plaintiff to establish by a preponderance of the evidence all of the material allegations of the plaintiff, and unless the plaintiff has proved these allegations by a preponderance of the evidence, your verdict must be for the defendant."

This instruction went even further, and placed a greater burden on the plaintiff, than an instruction like defendant contends for. In view of its being given, we find no merit in defendant's contention; and, with such a burden being thereby placed on plaintiff, we think the court committed no error prejudicial to defendant, in not adding to it a further instruction that defendant was not plaintiff's insurer. By placing on plaintiff the burden that this instruction made a prerequisite of his recovery, the trial court did, in effect and in one way, tell the jury that defendant was not an insurer of plaintiff's safety.

Under the evidence in this case, the trial court committed no error in not instructing the jury, as defendant contends should be done in a case where an employee is "his own boss as to the method of performing the work assigned him * * *". Such an instruction would have excluded the issue of defendant's duty to furnish plaintiff safe tools, from which to select, for performing the task assigned to him, and the further issue of whether or not defendant had performed that duty in this case. In addition

to the evidence we have mentioned concerning defendant's 35-ton manual jacks, there was other testimony tending to show that defendant's 50-ton power jacks were also defective, and that consequently, even though plaintiff had started the task of elevating the car with the power jacks, he would still have had to use the manual jacks to lower it. In our opinion, the evidence does not sufficiently show plaintiff "knowingly and voluntarily chose a more dangerous method" of performing his task than any safe method of doing it provided for defendant, for the omission of such an instruction, to constitute reversible error.

 Under subdivision "B" of defendant's Proposition V, its counsel reviews some of the trial court's instructions again, but instruction No. 23 is the only one of them alleged to be, in itself, ground for a new trial. That instruction seems to have been a statement with reference to the doctrine of res ipsa loquitur (without so naming it) and apparently had reference to the allegations in plaintiff's petition to the effect that the manner in which the jack mechanism "allowed or caused the jack handle to fly off and hit * * * (plaintiff) * *. * " was unknown to him, and to plaintiff's failure, or inability, to prove what caused the jack to slip and so act. Defense counsel assert that said instruction was a mis-statement of the law, but cites no authority to support this assertion. And, more significant than this is the fact that they cite nothing to demonstrate that the jury, in its deliberations and consideration of this instruction, along with the others given, was confused or misled and caused to render a prejudicial, rather than a just, verdict. We have hereinbefore noted the absence of any charge in defendant's argument that the verdict was excessive, provided the evidence was sufficient to show defendant liable, at all, or in any amount. And, defense counsel make no effort—other than many argumentative and some extravagant statements concerning the *potential* for prejudice in the repetition, and other alleged errors, in the instructions—to show that the verdict would have been any different had such alleged errors not occurred. In citing Thompson v. Galion Iron Works & Mfg. Co., 201 Okl. 182, 203 P.2d 438, 440, defendant recognizes the rule there enunciated, as follows:

"Ordinarily repetition in instructions of itself is not reversible error unless it clearly appears to have misled the jury."

Assuming that the jury was justified in finding for plaintiff (and defendant makes no claim it was not) if (as we have found) the evidence was sufficient for submission to it, how does it appear that the jury was misled or confused, or that defendant was prejudiced—in the absence of excessiveness, or claim of excessiveness, in the verdict? In the absence of any claim of excessiveness in the amount of the verdict, we consider it conceded that its amount was amply supported by the undisputed evidence of plaintiff's damages. Accordingly, we are not called upon to weigh it, or to attempt to thereby discover some showing that the verdict would have been different had the alleged errors in instructions not have occurred. As to such alleged errors, like alleged errors in the admission of evidence (Harris v. Conway, 343 P.2d 1069, 1076) such probability of a different verdict has been recognized by this court as a salient test of reversible error, where the verdict and judgment are within the issues and supported by competent evidence, and there has been no "serious misdirection" of the jury, with the instructions as a whole fairly submitting to it the decisive issues of the case. See Reinhart & Donovan Co. v. Williamson, 191 Okl. 539, 131 P.2d 765. Notice also St. Louis-San Francisco Ry. Co. v. Withers, Okl., 270 P.2d 341, with reference to determining prejudice from an inapplicable instruction. There is no question but that the verdict and judgment in this case are within the issues, and, after reviewing the evidence, we have determined that they are not without competent evidence reasonably tending to support them on the issue of defendant's liability. Disregarding the size of the verdict, we have found in none of defendant's arguments,

that are supported by the record, anything to render it probable that the verdict would have been different had the errors it alleges in the trial court's instructions and procedure, not occurred. Accordingly, the judgment of the trial court is hereby affirmed.