ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, Plaintiff in Error,

v.

Dewey C. KING, Defendant in Error.

No. 39305.

Supreme Court of Oklahoma.

Nov. 28, 1961.

Rehearing Denied Feb. 13, 1962.

836

James L. Homire, St. Louis, Mo., and Franklin & Harmon, Oklahoma City, for plaintiff in error.

Berry & Berry, and Hubert Gibson, Oklahoma City, for defendant in error.

BLACKBIRD, Vice Chief Justice.

The parties appear here in reverse to their appearance in the trial court, and they will be referred to as "plaintiff" and "defendant", as they appeared there.

Plaintiff, a so-called "clerk" at defendant's Oklahoma City store for maintenance materials, commenced this action, under the provisions of the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.) to recover damages in the total sum of $99,000.00 for personal injuries he allegedly received July 27, 1957, in attempting to unload, from a boxcar in which it had been shipped from defendant's general store department in Springfield, Missouri, to a dock near the Oklahoma City store, a piece of bar iron, 16 feet long, 3 inches wide and ⅝ths of an inch thick, and weighing between 100 and 160 pounds.

One of the duties plaintiff's petition alleged defendant, as his employer, owed him—and was negligent in neglecting to discharge—was that of furnishing him "a fellow worker, or adequate assistance, for handling the heavy and lengthy section of bar iron which he was required to handle and unload; * * *."

Defendant's answer pleaded both (1) that if plaintiff was injured, as alleged, it was due solely to his own negligence; and (2) that if defendant was negligent, plaintiff was also, and his injury would not have occurred except for his contributory negligence.

At the trial, it was obvious that defendant was attempting to develop the theory that plaintiff was negligent in attempting the unloading job, *without requesting* help from, or through, his superior, defendant's storekeeper, W. I. Riggins; and, in his selection of the method he used in attempting the task.

Plaintiff testified that the first time he asked Riggins to help him unload heavy material from a boxcar he refused because of recent surgery. He further testified that thereafter, the only help he had in unloading such cars was from an "extra" man defendant specially hired when there was lumber to unload. Plaintiff further testified that, at his request, this extra man would also help him unload bar iron, but, on the morning of his alleged injury, there was no such man on duty, or readily available.

Bearing upon the method plaintiff used to perform the task at which he was allegedly injured, it was established that, at times in the past, the job of unloading bar iron, like the piece involved in this case, had been done at the same dock, both by two men working together, and by one man working alone. When two men cooperated in unloading such bars of iron, they would walk into the car, each grasp opposite ends of a bar, and carry it, suspended between them, through the car's open door to the dock. According to the testimony, a method of doing this job, when one man was performing it alone, was for him to lift one end of the bar at a time, until he had dragged it along the floor of the car to a position where he could drag it out of the door to the dock, and pull it onto a baggage truck or cart. Instead of using that method the morning in question, however, plaintiff, without consulting the storekeeper, Riggins, or asking him for help, went into the car to unload the bar iron, by picking up one end of it, "working" himself to its center "to get a balancing point", then lifting the whole bar off the floor, for carrying through

the car's open coor. Plaintiff testified, inter alia:

"Mr. Riggins had told me that was the best way to do it where there was only one man unloading it."

His testimony as to how he suffered his alleged injury, after he entered the car (the car's open door being on its north side) was as follows:

"I lifted the east end of the bar of iron and worked my way down towards the center of it to try to get a center to make it balance, and when I got down to where I thought the center was I lifted the complete bar. Well, the west end of it started to go up and the east end of it down, and so I saw I was too far to the west. Well, I tried to shift back to the east a little to make it balance, and when I did that well, the pain caught me in my back, twisted my back and caused the pain. There was some barrels in the west end of the car and I let the west end of the bar down on the barrels and dropped the east end to the floor."

Plaintiff further testified:

" * * * there was a severe pain in across my back bone about the belt line and then up and down the right side * * * of the back bone.

"Q What did you do?

"A I couldn't do anything for a few minutes except stand there.

"Q Were you in a bending position when it hit you?

"A My shoulders might have been bent a little. I think my back was straight.

"Q Did you have the entire weight of this bar in your hands when this happened?

"A Yes, sir.

"Q Then describe, please, where you went and who you saw, and what you did after that?

"A After I got to where I could move, after the pain eased enough I

could move, I went and told Mr. Riggins that I had got hurt."

During plaintiff's cross examination, defense counsel obtained from him confirmation of the fact that the defendant company had a printed rule, or regulation, (No. 71) which read as follows:

"Employees must not lift beyond their normal physical capacity, avoid jerking or twisted positions and obtain help to lift or handle heavy or cumbersome objects."

When counsel asked plaintiff if he was familiar with that company rule, on July 27, 1957, he admitted that he was, and explained that this rule was why he had " * * * kept asking for help * * *". As his excuse for failing to ask Mr. Riggins for help on the particular day of the alleged injury, he stated: " * * *, I knew it wouldn't do any good."

At the close of plaintiff's evidence, defendant's demurrer thereto was overruled, and it called several witnesses of its own to the stand. Among these was W. I. Riggins, then employed by defendant at Springfield. To some extent, Riggins corroborated plaintiff's testimony, stating that about 10 months before coming to work at Oklahoma City, he had had a "rupture operation", and had been told not to pick up "too much weight" for a year after the operation. Riggins denied, however, that he had ever refused to give, or furnish, plaintiff assistance in unloading cars, when requested; and insisted that he had often helped plaintiff do such work, both before and after his alleged injury. Riggins further testified in substance that he specifically instructed plaintiff to call him when he needed help. Among other things, Riggins also testified:

"We had a working arrangement there. I had to work in the warehouse and in the office and at the same time he (plaintiff) was out in the car, and we had to have someone inside to tend to the counter and answer the telephone various sundry jobs, and when he run into something that he thought was too

much for him to handle he could come and get me and I would help him."

Riggins denied that he had ever attempted to tell, or show, plaintiff how to unload materials from the box cars, explaining that plaintiff was an experienced man, and indicating, in substance, that he had had more experience in that type of work than the witness. Riggins also testified, that there was "no time limit" on unloading the car; and plaintiff testified he knew this. Riggins further testified, in substance, that if a car's contents were such that plaintiff could not safely unload them, he could leave them in the car, and that if he (Riggins) could not get the car unloaded later, then he could send such materials back to Springfield.

At the close of the trial, after both parties had rested, defendant moved for a directed verdict, which motion was overruled.

After the cause's submission to it, the jury returned a verdict in plaintiff's favor for damages in the sum of $29,000.00, itemized as follows:

"$4,000.00 for hospital, Doctor and medical expenses;

"$5,000.00 physical impairment, pain and suffering;

"$20,000.00 impairment and reduction of his earnings."

Said verdict was incorporated in the judgment thereafter entered in accord with it. After the overruling of its motion for a new trial, defendant perfected the present appeal.

For reversal, defendant first argues under subdivisions "A" and "B" of its Proposition I, that the trial court erred in overruling its demurrer to plaintiff's evidence and motion for a directed verdict.

Postponing consideration of subdivision B, until after dealing with other propositions, we now consider subdivision A, which is as follows:

"No case of actionable negligence on the part of the defendant was shown by the evidence."

Defendant's argument in support of this contention is foretold, and summed up, in the following excerpt from pages 78 and 79 of its brief:

"The position of the defendant is that, considering only the evidence most favorable to the plaintiff, such evidence is insufficient under the law to sustain such an allegation of negligence on the part of the defendant. The task being performed by the plaintiff was not an unusual one; he and his fellow employees had safely performed the identical tasks many times. The plaintiff was an experienced employee, and was the best judge of his own strength and ability to unload the particular piece of metal in issue. Plaintiff worked under a direct order, of which he was aware, that he should not attempt to lift any object which was too heavy or too cumbersome to be lifted in safety. Plaintiff made no complaint or request for assistance either on the Friday before his accident when he received a copy of the requisition listing the items which would be on the car, or on Monday when he opened the car and started to unload it. The previous request for assistance, about which plaintiff testified, was too general in nature to place defendant upon notice of any need by plaintiff for assistance in unloading the bar iron from the car in question."

For some thirty pages following the above quoted statement, defendant's argument is interspersed with extensive citations of, and quotations from, more than twenty cases, many of which are discussed in the Annotations at 36 A.L.R.2d 8 and 61 A.L.R.2d 811. We have carefully examined and studied all of them. It would unnecessarily lengthen this opinion to cite, and discuss, each separately. Suffice it to say that some of them—as defense counsel expressly and inferentially recognize—were not F.E.L.A. cases; others are distinguishable from the present case by important differences in facts and circumstances; and still others were promulgated before Con-

gress's 1939 Amendment of the F.E.L.A., supra.

A large part of plaintiff's argument deals with the evidence, which, when analyzed, is found to have little, or no, significance in connection with any potential defense except one of those rendered inapplicable or ineffective by the cited federal legislation, such as: "Assumption of risk." See Southern Ry. Co. v. Welch, U.S.C.A. 6th Cir., 247 F.2d 340, and the cases cited therein. Notice also Thomson v. Texas & Pac. Ry. Co., 353 U.S. 926, 77 S.Ct. 698, 1 L.Ed.2d 722; 353 U.S. 968, 77 S.Ct. 1047, 1 L.Ed.2d 917. From the two recent cases cited, it can only be concluded that under the controlling current federal enterpretation of the F.E.L.A., as amended in 1939, supra, and its proper application to cases of this character, the plaintiff-employee's omission to ask the defendant-employer for help, or assistance, is no obstacle to his right to have a jury rule upon whether defendant has discharged its "nondelegable obligation of providing sufficient help for the particular task" (Southern Ry. Co. v. Welch, supra) he was performing when injured. It is therefore unnecessary to mention the respects in which plaintiff's evidence might be considered as making the defendant's duty appear more certain, and its omission less excusable here, than in the Thomson case, supra. We are not convinced that all reasonable men would agree, on the basis of the evidence most favorable to plaintiff, that the unloading of bar iron, in which plaintiff was engaged, was considered "a one-man job". Nor are we convinced they would agree with defendant's contention that "* * * the only reasonable inference to be drawn from the fact that, at times two men unloaded such bars, is that it was a matter of convenience, not a safety factor." (In this connection, plaintiff testified that when he was "dock man" and Orrell, a former employee, was store clerk, "* * * we most generally handled it (bar iron) with two men.") Because of the necessity of raising such a bar of iron from the floor—(like a teeter totter) in almost perfect equipoise—to enable both its ends to clear the box car floor (and the cartons and other shipments of materials laying on the floor beside it), it is obvious that, in thus maneuvering the ends of the bar, there is a latent hazard of fortuitous injury not involved in simpler lifting. We think both reason, and the better-reasoned authorities, support the trial court's overruling of defendant's motion for a directed verdict and submission of the cause to the jury for a decision of the hereinbefore stated questions.

Under its Proposition VI, defendant complains of alleged errors in the court's instruction of the jury. Examination of the court's instructions, other than Instruction No. 6, reveals as inaccurate, exaggerated, and misleading, defense counsel's claim that "the impression was left with the jury that all that was necessary to be proven by plaintiff was that he received an accident while working alone." Such a claim ignores other instructions demonstrating to the jury that, to return a verdict for plaintiff, it had to find defendant negligent in the matter of plaintiff's working alone, and that such negligence was responsible in whole, or in part, for plaintiff's injury.

Nor do we think the court's refusal to give defendant's requested Instruction No. 9 was error. The giving of that instruction would have had a tendency to create a question in the minds of the jurors as to plaintiff's physical capability of discharging the duties of a store clerk, and have tended to relieve defendant from any charge of negligence in directing him (through Riggins) to perform the task, in which he was engaged at the time of his alleged injury. There was no evidence sufficient to contradict the proof of plaintiff's physical capacity, inherent in the simple fact that for a year and a half, or more, he had (adequately as far as the record shows) performed all of the duties of a store clerk.

Defendant apparently also takes the position that the court should have given its requested instructions numbered 10–18, both inclusive. Defendant's requested Instruc-

tion No. 10 would have told the jury, in effect, that an employee like plaintiff assumes the risks of his employment, and, if he chooses to continue said employment, rather than terminate it, then his employer is not liable for an injury he might suffer thereby. What we have said concerning abolition of the defense of assumption of risk under the F.E.L.A. renders it unnecessary to further explain why the court did not err in refusing this instruction. See the comments under Footnote 8 of Tiller v. Atlantic Coast Line R. Co. (318 U.S. 54, 63 S.Ct. 444, 447, 448, 87 L.Ed. 610.

■ Requested Instruction No. 11 stated, among other things, that an employee is required to look out for his own safety. The applicable substance of this instruction was more correctly stated in the court's instructions numbered 8 and 9. Refusal of the requested instruction was therefore not error.

■ Defendant's Requested Instruction No. 12 would have told the jury, in substance, that, where an employee is free to follow the method he chooses in performing a task, he assumes the risk of being injured in using that chosen method. Such an instruction was not applicable to this case. It would have tended to mislead the jury into believing that an employer may delegate to the employee a duty that is a nondelegable one under the F.E.L.A., supra. Furthermore, there was evidence in this case tending to show that the method of unloading bar iron, plaintiff employed, was the one that had been customarily used in the past, when such unloading was being done by one man, alone; and it will be remembered that, according to plaintiff's testimony, this method had been specifically recommended to him by his superior, Riggins.

■■ Defendant's requested Instruction No. 13 was in part as follows:

"* * * plaintiff is relying solely and entirely upon his allegation that the defendant required him to lift a too heavy object without adequate assist-

ance. * * * before the plaintiff can recover on this contention, the burden is upon him to prove to your satisfaction a need for such assistance for the particular task he was engaged in at the time of his injury and that any need for such assistance was brought to defendant's notice. * * *."

Assuming, without deciding, that under the current federal court interpretation of the F.E.L.A., supra, it is the duty of an employee, like plaintiff, to apprise an employer, like defendant, of his need for assistance, before he is injured (instead of such duty being a nondelegable one of the employer to learn, or be acquainted, with, such need, on its own initiative), we do not think that, on the basis of the evidence in this case, the court erred in rejecting the above quoted instruction. We find in the evidence no substantial basis for a denial of, or joinder of issue as to, defendant's knowledge of the need, if any, for a second man on the job, when a box car containing bar iron was to be unloaded. As already noted, defendant's storekeeper, Riggins—according to his own testimony—had assisted plaintiff numerous times; and, no claim is made that Riggins did not know the car plaintiff was to unload (on Monday) contained bar iron, in view of the undisputed fact that he, himself (on the previous Friday) had handled the "requisition" listing the car's contents.

The trial court committed no error in his refusal to give defendant's requested Instruction No. 14, because the material substance of its applicable portion was included in said court's Instruction No. 3.

What we have said concerning the court's refusal to give defendant's Requested Instruction No. 13 applies to part of requested Instruction No. 15. Error, if any, in refusing to give the remainder of said requested instruction was rendered harmless by other instructions, of similar import, given by the court.

■ Defendant's Requested Instruction No. 16 was as follows:

"You are instructed that the plaintiff is not entitled to recover upon his allegation that there were insufficient men furnished to lift the object in question, unless it is first shown to your satisfaction that the plaintiff made a *protest* to the defendant before attempting to lift the particular object, and was required, in spite of the *protest,* to proceed with the work which occasioned the injury." (Emphasis ours.)

We do not think the trial court's refusal to give the above instruction was error. As already indicated, Riggins testified that plaintiff had requested help from him in unloading cars on numerous occasions, thus corroborating to an extent, plaintiff's testimony that he had asked Riggins for help many times between the date of Riggins' claimed first refusal of it (between 10 and 12 months after his "rupture operation") and the date of the accident. Of course, other testimony by Riggins denied plaintiff's testimony that Riggins had refused these numerous requests. But, the latter formed a logical basis for plaintiff's claimed excuse for not requesting Riggins' assistance on the day in question, viz.: " * * *, I knew it wouldn't do any good."

In considering a proper ruling on defendant's motion for a new trial, we do not regard as crucial, the matter of whether defendant's apprisal, by plaintiff, of his need for assistance in unloading bar iron, was done by previous "requests", or by "protest" made on the morning of July 27th. Under the Southern Railway Company Case, supra, evidence on this subject related to defendant's negligence and plaintiff's contributory negligence; and defendant cannot complain of its submission (along with other pertinent evidence) to the jury for determination of defendant's liability. This conclusion is dispositive of the claimed error in the court's refusal to give defendant's Requested Instruction No. 18; and what we have already said demonstrates that the court committed no error in refusing defendant's Requested Instruction No. 16.

Before discussing the trial court's alleged error in refusing defendant's Requested Instructions numbered 15 and 17, we will consider sub-heading "B", under defendant's Proposition I, and some other asserted grounds for reversal. Under said Proposition I, B, defendant argues that a second reason the trial court should have directed a verdict in its favor was that:

"The evidence was insufficient to show a causal relationship between plaintiff's medical condition and his accident."

Specifically, the quoted assertion pertains to defendant's claim of the insufficiency of the testimony of plaintiff's medical expert witnesses, Dr. F, and Dr. P, a psychiatrist, in view of what this court said and held in Cohenour v. Smart, 205 Okl. 668, 240 P.2d 91. As described by defense counsel, the cited case requires showing by medical evidence that it was *more probable* that plaintiff suffered an injury from defendant's negligence, instead of showing only the *possibility* of a causal connection between the two. As urged by counsel for both parties, we have carefully examined all of the testimony of these two physicians, and have arrived at an independent analysis of it as a whole, guarding (as counsel cautions us) against being unduly influenced by particular portions of it, when segregated from the rest, and viewed out of context. To fully describe this evidence, and detail how we arrived at our conclusions, would unnecessarily lengthen an already long opinion, but pertinent observations concerning it are as hereinafter set forth. Dr. F's testimony establishes without contradiction, or valid ground for dispute, that, when plaintiff became his patient, he suffered from painful muscle spasm in the area of the spine. It was this doctor's opinion that this condition was relieved by medication he prescribed for relaxing these muscles. The x-ray pictures, examinations and tests he subsequently made, revealed no evidence of trauma at that time, but did reveal an old, or previously existing, degenerate arthritic condition and a congen-

ital variant of the lumbo-sacral level of the spine. We think this physician's testimony, as a whole, definitely indicates the probability of plaintiff's sudden straining of his back (by lifting the bar iron) having concurred with, or "aggravated", the abnormal condition already existing in and around his spine, to produce the muscle spasm. Thus, even though, after the muscle spasm had responded favorably to treatment, was probably relieved, and Dr. F. could then find no objective, or tangible, cause for plaintiff's renewed complaints and claimed pain, it would have been beyond the trial judge's proper prerogative to have held (by directing a verdict for defendant) that plaintiff had suffered no physical injury from the accident. All reasonable men might not agree. Since the evidence was sufficient, under the criteria of the above cited case, to show a causal connection between the lifting episode, and such original injury to plaintiff, the trial court would not have been justified in withholding submission of the cause to the jury, merely because of evidentiary uncertainty as to whether said injury accounted for plaintiff's condition *after* treatment of the muscle spasm. Whether or not this later condition, diagnosed by Dr. P as "involutional melancholia" (and said by him to be totally disabling) had a psychosomatic origin, or was the result of the original injury, would pertain only to the amount of damages, to which plaintiff was entitled, rather than to the question of whether or not he was due any recovery at all. Therefore, as defendant does not specifically argue, or demonstrate, that the verdict was excessive, nor its position call for a determination that, if it was liable in any amount, such amount could not justifiably be as great as the total recovery allowed by the verdict, it is inappropriate here, as it was in Missouri-Kansas-Texas R. R. Co. v. Jones, Okl., 354 P.2d 415, 422, to undertake such determination.

Having determined that the trial judge committed no error in submitting the cause to the jury for adjudication of defendant's liability, and having no predicate upon which to inquire into the excessiveness of the verdict (an important criteria, under the Jones Case, supra, for determination of prejudice from alleged error in instructing) we find no valid ground for reversal in the trial court's refusal to give defendant's Requested Instructions numbered 15 and 17. While *portions* of these instructions (as distinguished from their whole) were sound, and might have correctly been given, we think the instructions given by the court (without resort to them) acquainted the jury sufficiently with the fundamental issues of the case that their refusal was not ground for reversal, in the absence of a showing of prejudice thereby. Consequently, such error, if any, must be deemed harmless.

Under its Proposition III, defendant first contends that the trial court erred in summarizing the pleadings filed in the case, when he commenced the task of instructing the jury. The record shows that this summary preceded the giving of the court's first numbered instruction, as a sort of foreword, or preface, to the numbered instructions. Here, as in Missouri-Kansas-Texas R. R. Co. v. Jones, supra, the judge in his first numbered instruction, told the jury that the allegations "made in the pleadings did not constitute any part of the proof of the facts alleged," except where an alleged fact was "specifically admitted by the other party." Here also, as in that case, the court, *instead of leaving the jury* to determine what issues were raised and presented, as appears to have been done in Schaff v. Richardson, 120 Okl. 70, 254 P. 496, and Lambard-Hart Loan Co. v. Smiley, 115 Okl. 202, 242 P. 212, cited by defendant but held inapplicable in the Jones case, supra) gave many other instructions defining and explaining the issues to be determined. In view of this already adjudicated difference between the situation in the cited earlier cases, and the one here and in the Jones case, we hold that the point here raised has already been determined by the latter case; and defense

counsel's argument fails to demonstrate the necessity (because of the earlier cases) of re-considering what we therein said and held.

Defendant next complains that the trial court erred in instructing the jury as he did by his Instructions Numbered 4, 6 and 10. In connection with our consideration of these alleged errors, it should be mentioned that in paragraph 5 of his petition, plaintiff alleged that, in addition to having failed and neglected to furnish him a "fellow worker or adequate assistance" for handling the bar iron, defendant was also negligent in particulars described in seven of the subdivisions of the same paragraph, including its failure and neglect to furnish him "adequate mechanical appliances for lifting and transporting" the bar iron, and neglect—because of the box car's rough and defective flooring—to furnish him a safe place to work. By its Instruction No. 4, the court instructed the jury, in part, as follows:

"The liability of defendant to respond in damages to this plaintiff for the injuries sustained by him, if any, and his right to recover damages from defendant for such injuries, are founded and based upon a statutory law of the United States, commonly known as the 'Federal Employers' Liability Act.' Said Act, in part, provides the following:

" 'Every common carrier by railroad while engaged in commerce between the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.' "

By its Instruction No. 6, the court instructed the jury, in part, as follows:

"You are instructed that it is the duty of the master to exercise reasonable care and caution to furnish its employee a reasonably safe place in which to work, reasonably safe appliances with which to work, and a reasonably safe method by which to work, and to use a reasonably adequate number of fellow servants for doing the work as may be required in the employment, and it is the duty of the master to exercise reasonable care so as not to expose its employee to perils and dangers which may be guarded against by ordinary care and diligence. * * *."

The trial court's Instruction No. 10 was as follows:

"Should you find from a preponderance of the evidence herein that the defendant was guilty of any of the acts of negligence alleged in plaintiff's petition, and that said negligence was the proximate cause of the accident and resulting injury to plaintiff, if any, then your verdict should be for the plaintiff and against the defendant; but if you do not so find, or should you find from the evidence that the accident and resulting injury to plaintiff, if any, was solely due to negligence of the plaintiff, if any, then in either of said latter events your verdict should be for the defendant."

In its argument as to alleged error in the above quoted instructions, defendant calls our attention to the fact that the only respect, in which plaintiff attempted, by his evidence, to show it guilty of negligence was in the matter of failure to furnish him help, or assistance, in unloading the bar iron. Obviously then, instructions pertaining to other pleaded negligence were not applicable to the issues of the case as formed, or joined, by the evidence. However, as said in St. Louis, S. F. Ry. Co. v. Withers, Okl., 270 P.2d 341, 346, we cannot believe

the jury was misled by such inapplicable instructions. In this connection, notice also Bottoms v. Botts, Okl., 349 P.2d 653, 659.

Under its Proposition IV, defendant contends that the trial court's giving part of its Instruction No. 13, without also giving defendant's Requested Instruction No. 21, was error. The part of Instruction No. 13 in question is as follows:

"* * *

"If you find and conclude that plaintiff has suffered a permanent injury and will suffer permanent disability in the future, you may take into consideration his normal life expectancy, as the proof has disclosed said expectancy; and award such sum as you determine will reasonably compensate plaintiff therefor, * * *."

Defendant's Requested Instruction No. 21 was as follows:

"You are instructed that as to the mortality tables which have been offered in evidence, such tables are not to be considered as an absolute basis for your calculations, but should be used by you as a guide only so far as the facts before you correspond to those from which such tables were computed. In this connection you should also consider the fact that all persons do not continue working to the age of expectancy. You should take into consideration that plaintiff may not have worked during all the years of his life, that his earnings may not remain stationary, and that such earnings may diminish in the future."

The only respect in which defendant's suggested modification of the court's Instruction No. 13, might have affected or had a bearing upon the jury's verdict was in relation to its size. Since defendant does not argue its second, or "Excessive damages", assignment of error, or demonstrate that the verdict and judgment were larger than warranted by the evidence (assuming defendant was liable in any amount) the showing of prejudice necessary to obtain reversal, on account of anything but fundamental error in instructions, is absent. Defendant does say that, if it was entitled to have the trial court give its Requested Instruction No. 21, and same had been given, "* * * it is probable that the jury would have reduced the amount apportioned * * *" to the verdict's twenty-thousand-dollar item designated: "impairment and reduction of his (plaintiff's) earnings." Defendant makes no attempt, however, to discharge its burden of supporting this statement; and it is obvious from the fact that, at the time plaintiff was injured, he was earning $3600.00 per year and had a life expectancy of 26.01 years, the jury might have allowed him, on the basis of the evidence, substantially more than twice $20,000.00 for that item of his damages. We, therefore, conclude this opinion, by incorporating in, and making a part of it, the following words from Missouri-Kansas-Texas R. R. Co. v. Jones, supra:

"There is no question but that the verdict and judgment in this case are within the issues, and, after reviewing the evidence, we have determined that they are not without competent evidence reasonably tending to support them on the issue of defendant's liability. Disregarding the size of the verdict, we have found in none of defendant's arguments, that are supported by the record, anything to render it probable that the verdict would have been different had the errors it alleges in the trial court's instructions and procedure, not occurred. Accordingly, the judgment of the trial court is hereby affirmed." [354 P.2d 422.]

Affirmed.

WILLIAMS, C. J., and DAVISON, JOHNSON, IRWIN and BERRY, JJ., concur.

WELCH, HALLEY and JACKSON, JJ., dissent.